Milligan, J.,
delivered the opinion of the court:
This claim is for the use and occupation of Dutch Island, iu Narragansett Bay, and is found to rest on the following facts:
On the 7th of July, 1861, Major Hunt, of the Corps of Engineers, wrote to Brigadier General Totten, Chief of Engineers, at Washington City, District of Columbia, suggesting the propriety of purchasing Dutch Island, Narragansett Bay, as a suitable place for the coast defence, and a camp-ground for volunteers and militia in training for active service in the field.'
On the 10th of the same month General Totten, Chief of Engineers, authorized Major Hunt to negotiate for the conditional purchase of the island, with directions that the owner of the island was to understand that no bargain will be binding without the approval of the Secretary of War. Pursuant to *160 these instructions, negotiations were set on foot for the purchase of the island; and, after mature deliberation, Carpenter, the claimant, agreed to sell and convey the land, together with the improvements thereon, to the Uuited States, for the sum of $21,000.
The terms of the bargain were laid before the Secretary of War, which he approved on the 20th of July, 1863, and on the next day Major Hunt was authorized, by telegram, to close the purchase. He did so verbally, and early in August thereafter the United States, by their officers, entered, with the consent of the claimant, into the possession of the premises, and began to prepare for fortifying the island, and they have held and occupied it ever since.
On the 1st of January, 1864, the claimant executed a deed to the.United States for the land sold, which, after some delay, was, on the 31st of October, 1864, examined, and approved, so far as the validity of the title ivas concerned, by the Attorney General. But in his opinion, he called attention to the Joint Resolution 11th September, 1841, (5 Stat., 468,) requiring the assent of the legislature of Rhode Island to the purchase and the cession of jurisdiction over the land before any public money could be paid for it. Subsequently the legislature of Rhode Island, on or about the 24th of January, 1865, gave its assent to the purchase, and ceded jurisdiction to the United States over the island.
Soon after this Mrs. Carpenter, the wife of the claimant, in February, 1865, acknowledged the deed executed theretofore by her husband. No money up to this time had been paid or tendered to the claimant for the land, although it was understood at the time of the parol agreement it was to be promptly paid. It was supposed that the money appropriated by the Act 20th February, 1863, could be applied to this purpose; but this question was submitted to the Attorney General, and on the 20th of April, 1865, he returned , his answer, in which he held that the money appropriated by this act could not be applied to this purpose. He further decided that under the Aet 1st May, 1820, (3 Stat., 568,) an executive department had no power to purchase land on account of the United States, and that all such purchases were illegal.
In this state of the case Congress, on the 12th of June, 1866, (14 Stat., 62,) appropriated $35,000 for sites then occupied and proposed to be occupied for permanent sea-coast defence.
*161 The purchase-price of the island, $21,000, was shortly thereafter, on the 7th of August, 1866, paid to and accepted by the claimant, and the United States now hold his deed for the property.
The court further find that the claimant bore true allegiance to the United States, and gave no aid. or comfort to the rebellion; and that the fair and reasonable rents and profits of the land sold, from August 1, 1863, to. August 7, 1866, when the purchase-money was finally paid, were $400 per annum.
We have been more particular in setting out the facts of this case in detail than the nature of the question involved in them really requires. But as the case is somewhat peculiar, we have thought it best to trace its history and to give the parties the benefit of a full finding of facts.
The action is for the use and occupation of the land from- the time the defendants were let into the possession, under the contract of purchase, up to the time the deed was accepted by the United States and the purchase-money paid. The question raised in this record is one purely of authority, and we find but little difficulty in resolving it. Whatever may be said of the general right of parties to recover compensation for the use and occupation of their property, the whole question here is, whether or not a party who enters on the premises of another under an agreement to purchase, which is afterward consummated by a valid conveyance in fee, is liable for rent for the time he occupied the premises before the deed was executed and accepted.
In answering this question, it is scarcely necessary to determine the point raised in argument, as to the precise time when the title to the land under consideration vested in the United States. It is enough to say, that the deed tendered to the defendants was, after the removal of all statutory difficulties, formally accepted, and the contract fully consummated by the payment of the purchase-money. So far as the Act 1st May, 1820, presented an obstacle in the way of carrying.out the original agreement, and the Act 20f7i February, 1863, in paying over the purchase-money, the law charged the claimant with full knowledge of both these acts, and when he contracted to sell the land and voluntarily admitted the defendants into possession, under an agreement to purchase in fee, he did it in legal contemplation as to the existing law's with his eyes open, and *162 cannot now complain if lie, failed in the contract to guard against the contingencies and delays which followed his own act.
The law seems well settled that, in order to recover rents for use and occupation, the relation of landlord and tenant must be established. The doctrine is illustrated in Taylor’s Landlord and Tenant, p. 472, in the following language. The learned author, after discussing the rule applicable to the renewal of leases by implication of law, &c., says: “But where the defendant entered on the premises under an agreement to purchase in fee, and after occupying them several years, refused to pay the purchase-money pn a deed being tendered to him, it was decided that the action did not lie, because the relation of landlord and tenant did not exist between them.”
To the same effect are the cases of Kirtland v. Pounsett, (2 Taunton’s R., 145,) and Little et al., administrators, v. Pearson, (7 Pickering R., 301.) See also Bancroft v. Wardwell, (13 Johns., 489,) and Smith v. Stewart, (6 Johns., 46.)
The reason of this rule is obvious, and when applied to this case is decisive. The law which gives the action for use and occupation always requires that some contract of demise should subsist; and the contract of sale, which is sufficiently proven in this case to account for the defendants’ possession of the premises, comiiletely disaffirms the existence .of any other contract, for there can be no implied promises in law, except in the absence of express promises. Kxpressum facit eessare taciturn, is the maxim. (Ohitty on Contracts, 23.)
On the whole, the claimant has made no case which we can sustain, and the petition must be dismissed.
Nott, J., did not sit on this case, and took no part in the decision.