Richardson, J.,
delivered tbe opinion of the court:
The claimant seeks to recover for the use and occupation, by the defendants, of certain real estate reputed to be owned by his testator at Andersonville, G-a., adjoining the famous rebel Andersonville prison-pen, seized and appropriated by the Army of the United States engaged in the suppression of the rebellion, May, 1865, and held by order of the War Department until the spring of 1875.
At the outset he is met with an objection to the jurisdiction of the court, founded upon the provision of the Act July 4,1864 (13 Stat. L., p. 381, ch. 240, § 1), re-enacted by the act of 1875, February 18, ch. 80, and incorporated into section 1059 of the second edition of the Bevised Statutes in the following words:
“The jurisdiction of the Court of Claims shall not extend to any claim against the United States growing out of the destruction or appropriation of, or damage to, property by the Army or Navy engaged in the suppression of the rebellion.”
The counsel for the claimant concede that this statute is an effectual bar against the power of this court to allow compensation to owners of property appropriated by the Army engaged in the suppression of the rebellion, for the use or occupation of real estate held by such appropriation while the rebellion continued. But they insist that as soon as the rebellion ended, as it did in the State of Georgia on the 2d of April, 3866 (The Protector, 12 Wall., 700), then the operation of that enactment «eased as to the future and continuing use by the United States or its military authorities of lands which the Army had previously captured, seized, and appropriated.
They further insist that the holding and use of the claimant’s property after the suppression of the rebellion, in time of peace, is a taking of private property for public use, for which they are entitled to just compensation by the provisions of the Constitution. (Const. Amend., art. 5.)
These very questions arose in the case of Bishop & Westcott (4 C. Cls. B., 448), and were then passed upon and decided; the court saying:
“But the act of 1864 cuts off our jurisdiction in all cases which grew otit of the appropriation of the premises in question. We have shown that the United States entered rightfully, and *294 it is not pretended that they assume to hold over under any other or different right than that under -which they entered. It may be wrong that they continue to hold the premises after the close of the war; but, if so, it is a wrong which this court has no power to redress.
“We cannot assent to the position that the seizure of this; property was made under the exercise of the inherent sovereign power of the State to take private property for public use, but it was a capture, or seizure, under express authority of the Act of August 6, 1861 (12 Stat. L., 319), which is widely different from a taking under the right of eminent domain. In the one case, private property cannot be taken without just compensation ; but in the other, it may be, and the title under the confiscation acts absolutely divested.
“ But be this as it may, the continued possession by the United States under the right by which they first seized the premises brings the case within the act of 1864, and excludes the jurisdiction of this court.”
Independently, however, of that statute and that decision* there is a fatal defect in the claimant’s case. The action is substantially that of assumpsit for use and occupation of land, which is governed by well established and familiar principles of the common law. It is founded upon privity of contract; upon a holding by permission of the owner of the property, and a promise by the occupant to pay rent, either express or implied. Mere occupancy under circumstances which are inconsistent and at variance with the presumption of such permission and promise is not sufficient to establish a cause of action.
Where one is in possession of land as a mere trespasser, the-owner cannot waive the tort and maintain an action of contract for use and occupation. The action does not lie against a vendor who remains in possession after having conveyed his title; nor against one who occupies under a contract to purchase which is not consummated; nor against a tenant in common by his cotenant; nor against one claiming title to the property in himself, or otherwise holding by a claim adverse to that of the rightful owner. (Smith v. Stewart, 6 Johns., 46; Carpenter v. United States, 6 C. Cls. R., 156; Langford v. United States, 101 U. S., 341.)
These principles involve more than the mere form of the action, which is immaterial in this court, where all cases are commenced by petition. They go to the merits of the case, since the court has no jurisdiction of cases of trespass and *295 other torts, and cannot award judgment for mesne profits as in a real action. The claimant must prove a promise, either express or implied, or he has no standing here.
The findings show beyond all question that the land for which rent is now claimed was taken and held neither by permission of the claimant nor with the intention on the part of the defendants or any of their officers to pay rent for it. The reputed owner was a citizen of a State in rebellion, and so, in law, was a public enemy. (Greeks Case, 10 C. Cls. R., 466; Desmare’s Case, ib., 385; affirmed 93 U. S. R., 605; United States v. Huckabee, 16 Wall., 414.) The property was seized by the military authorities in time of war because it had been occupied and used by the rebels in connection with the Andersonville prison-pen, and it continued to be held on that account, as incident to the war, long after the rebellion had been suppressed.
Nothing could have been further from the intention of the officers of the United States than the payment of rent for such property thus taken possession of and held by them. This is made manifest by the report of General Meigs in reply to the demand of the claimant’s testator in 1868 for a return of the property to him. This report was approved by Judge-Advocate-General Holt, and by the Secretary of War, who referred it to the General of the Army, to give the necessary instructions for the enforcement of its recommendations. In that report we find the grounds on which the Department of War maintained possession of the property, and they are wholly inconsistent with any promise to pay rent. Title to the property was claimed on behalf of the United States by the right of conquest. This claim of right was thus expressed:
“Whether the lands were ever sold to the rebel authorities, or whether they were leased or given to them by sympathizing owners, the United States, I think, should be held to have acquired possession and title as successors to those who erected the stockade and buildings and starved so many thousand patriotic men.
“I do not think the land should be allowed to revert to the former owners, some of whom, it has been stated, have boasted that the soil, enriched by the bodies of our martyrs, would produce excellent wine, and should be converted into vineyards. These people should not be allowed to make themselves drunk on the blood of their enemies — our friends. It ought to remain desolate forever in respect to the memory of the martyrs who suffered and perished on it.
*296 “I recommend that the general commanding the Department of the South be instructed to hold the land as belonging to the United States — at least, until the United States is shown to be unable to hold it.”
As the military authorities of the United States held this property under a claim of right, adverse to that of the reputed owner of the title, whoever he might be, without admitting or creating, either expressly or by implication, the relation of landlord and tenant, the present claimant has no cause of action.
With these views it becomes immaterial whether or not the reputed ownership of the property by the claimant’s testator, unaccompanied by proof of record title in him, would be a sufficient ground of recovery, if there were no other objections to the claim, and we express no opinion on that point.
The judgment of the court is that the petition be dismissed.