# GREAT FALLS MANUFACTURING COMPANY *v.* THE ATTORNEY GENERAL.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MARYLAND.

Submitted December 19, 1887. — Decided February 6, 1888.

An arbitration was had in 1863 between the Great Falls Manufacturing Company and the Secretary of the Interior (on behalf of the United States) in regard to the amount of compensation to be paid to the company for its land, water rights and other property to be taken for the Washington aqueduct. The arbitrators reported four alternative plans for the construction of the proposed work, and decided that if Plan 4 should be adopted, involving only a dam from the Maryland shore to Conn's Island, the United States should pay as damages the sum of $15,692; but that if Plan 1 should be adopted, involving the construction of a dam from the Maryland shore across the Maryland channel and Conn's Island to the Virginia shore, the company should receive as damages the sum of $63,766, and should also have the right to build and maintain a dam and bulkhead across the land of the United States in Virginia, and to use the water, subject to the superior right of the United States to its use for the purposes of the aqueduct. The United States constructed the aqueduct, adopting substantially Plan 4. The company sued in the Court of Claims for compensation, and recovered a judgment for $15,692, which was affirmed here. 112 U. S. 645. By an act of Congress passed in 1882, for increasing the water supply, provision was made for the acquisition of further property and further rights, and for the extension of the dam across Conn's Island to and upon the Virginia shore. This statute provided for a survey and for the making and filing of a map of the property to be taken and acquired under it, and also for notice of the filing to the parties interested, for appraisements of property taken, for awards of damages, and for payment of the awards

on receiving conveyances of the lands, &c., taken. A right was also given to each owner dissatisfied with the award in his case, to proceed for damages in the Court of Claims against the United States within one year from the publication of the notice. Under this act of 1882 a dam was constructed substantially in accordance with Plan 1, and other property and other rights of the Great Falls Company were taken in the construction, but no provision was made for a canal and bulkhead whereby the company could use the surplus water. On the last day of the year after the filing of the notice under the statute, the company filed its petition in the Court of Claims to recover damages for the taking of its property, and then filed this bill in the Circuit Court, alleging that that petition had been filed from fear that the company might lose any benefit of the act by limitation, and to save its rights, and for no other purpose; that the survey and map were defective inasmuch as land had been taken from the company which was not included in them; that the notice of the filing of the map had not been given as required by the statute, but was materially defective; and that the act requiring the company to submit its rights to the judgment of the Court of Claims was unconstitutional in that, among other things, it made no provision for ascertaining the amount of compensation by a jury. For relief the bill prayed that the structures commenced might be removed, or, if it should appear that the property had been legally condemned, that an issue be framed, triable by jury, to ascertain the amount of plaintiff's damage, and that judgment be given for the sum found. Defendant demurred and, the demurrer being sustained, the bill was dismissed. *Held:*

(1) That the United States having adopted and executed Plan 4, neither party was bound by the award as to Plan 1; and as no reservation had been made by the act of 1882 as to the bulkhead or canal for the use of the surplus water, that the officers charged with the construction of the dam were not bound to concede such rights to the company, though the United States were bound to make compensation for whatever rights or property of the company were taken and appropriated to public use;

(2) That, as the survey and map had been made in good faith and undoubtedly embraced most of the property taken, if it happened that any tract taken was not included in them the proceedings were not.invalidated by the omission, but the United States were bound to make compensation for the omitted tract as if it had been included in the map;

(3) That defects in the notice were waived by filing the petition in the Court of Claims;

(4) That the commencement of that proceeding was a waiver of any constitutional objection against the taking of the company's property or of the settlement of the amount of the damage therefor by the Court of Claims; but this was decided without intending to express a doubt as to the constitutionality of the act of 1882;

(5) That the purpose with which the plaintiff invoked the jurisdiction of the Court of Claims was immaterial.

THE court stated the case as follows :

Congress formed the purpose, many years ago, of supplying the cities of Washington and Georgetown with water from the Potomac River, at the Great Falls, in the State of Maryland.[1] A controversy having arisen between the Secretary of the Interior — charged with the expenditure of public moneys appropriated for that purpose — and the Great Falls Manufacturing Company, as to the compensation, if any, which the latter was entitled to receive for certain land and water rights, at or near the Great Falls, which that company claimed and which the officers of the Government proposed to take for public use, articles of agreement were signed by that company and the Secretary of the Interior, on the 20th of November, 1863, submitting the matters in dispute to the arbitrament of Benjamin R. Curtis, Joseph R. Swan, and others. The Government exhibited to the arbitrators four alternative plans, with specifications, for what is called the Potomac dam of the Washington aqueduct. The majority of the arbitrators awarded and determined, February 28, 1863, that "if the United States shall adopt and decide to execute the plan of operations designated in the specifications and on the plat as Dam A, being the first plan of operations mentioned in the said specifications, then the Great Falls Manufacturing Company are legally entitled to the sum of sixty-three thousand seven hundred and sixty-six dollars, ($63,766,) as compensation for the use and occupation by the United States of the land, water rights, and privileges claimed by the said company, and all consequential damages to the property and rights of the said company, which they may legally claim by reason of the execution by the United States of the plan of operations last above mentioned. But this assessment is based upon the condition that the said company, as against the United States, may lawfully build and maintain a canal and bulkhead across and upon the land of the United States, on the Virginia shore

---

[1] 10 Stat. 206, c. 97; 11 Stat. 225, c. 105; 11 Stat. 263, c. 14; 11 Stat. 323, c. 154; 11 Stat. 435, c. 84; 12 Stat. 106, c. 211; 13 Stat. 384, c. 244; 14 Stat. 316, c. 296.

of the Potomac, since marked on the same plat numbered 4 as belonging to the United States, so as to use the water of the pool above the Dam A, subject to the superior right of the United States to use the water for the aqueduct in the manner and to the extent shown by the aforesaid specification of the said Dam A, and its corresponding plan of operations."

This plan involved the construction of a dam from the feeder of the aqueduct, thence across the Maryland channel and Conn's Island to the Virginia bank, on land belonging to the United States.

The arbitrators concurred in awarding and determining that "if the United States shall adopt and decide to execute the plan of operations designated in the specification and on the plat as 'Plan 4th,' being the fourth plan of operations named in the said specification, then the said Great Falls Manufacturing Company are legally entitled to the sum of fifteen thousand six hundred and ninety-two dollars ($15,692) as compensation for the use and occupation by the United States of the land, water rights, and privileges claimed by the said company, and all consequential damages to the property and rights of the said company which they may legally claim by reason of the execution by the United States of the plan of operations last above mentioned."

The latter plan involved the construction of a dam of masonry from the Maryland shore to Conn's Island, and gave the United States the right to deepen the channels on the Maryland side of that island, near its head.

In *United States* v. *Great Falls Manufacturing Company,* 112 U. S. 645, this court affirmed a judgment of the Court of Claims for $15,692, as compensation and damages to that company by reason of the adoption and execution by the United States of Plan 4.

The present suit by the Great Falls Manufacturing Company relates to the construction of a dam across and from Conn's Island to the Virginia shore, for which provision was made by an act of Congress approved July 15, 1882, 22 Stat. 168, c. 294, entitled "An act to increase the water supply of the city of Washington, and for other purposes." The act provides for

a survey and map of the land necessary to extend the Washington aqueduct to the high ground north of Washington, near Sixth Street extended, and of the land necessary for a reservoir at that point.    But it also contains the following provisions:

"The Secretary of War shall cause to be made   .   .   .   a like survey and map of the land necessary for a dam across the Potomac River at the Great Falls, including the land now occupied by the dam, and the land required for the extension of said dam across Conn's Island to and upon the Virginia shore; and when surveys and maps shall have been made the Secretary of War and the Attorney General of the United States shall proceed to acquire to and for the United States the outstanding title, if any, to said land and water rights, and to the land on which the gate-house at Great Falls stands by condemnation:   .   .   .   *And provided further*, That if it shall be necessary to resort to condemnation, the proceeding shall be as follows:

"When the map and survey are completed, the Attorney General shall proceed to ascertain the owners or claimants of the premises embraced in the survey, and shall cause to be published, for the space of thirty days, in one or more of the daily newspapers published in the District of Columbia, a description of the entire tract or tracts of land embraced in the survey, with a notice that the same has been taken for the uses mentioned in this act, and notifying all claimants to any portion of said premises to file, within its period of publication, in the Department of Justice, a description of the tract or parcel claimed, and a statement of its value as estimated by the claimant.    On application of the Attorney General, the chief justice of the Supreme Court of the District of Columbia shall appoint three persons, not in the employ of the Government or related to the claimants, to act as appraisers, whose duty it shall be, upon receiving from the Attorney General a description of any tract or parcel the ownership of which is claimed separately, to fairly and justly value the same and report such valuation to the Attorney General, who thereupon shall, upon being satisfied as to the title to the same, cause to be offered to the owner or owners the amount fixed by the

appraisers as the value thereof; and if the offer be accepted, then, upon the execution of a deed to the United States in form satisfactory to the Attorney General, the Secretary of War shall pay the amount to such owner or owners from the appropriation made therefor in this act.

" In making the valuation the appraisers shall only consider the present value of the land without reference to its value for the uses for which it is taken under the provisions of this act.

" The appraisers shall each receive for their services five dollars for each day's actual service in making the said appraisements.

" Any person or corporation having any estate or interest in any of the lands embraced in said survey and map, who shall for any reason not have been tendered payment therefor as above provided, or who shall have declined to accept the amount tendered therefor, and any person who, by reason of the taking of said land or by the construction of the works hereinafter directed to be constructed, shall be directly injured in any property right, may, at any time within one year from the publication of notice by the Attorney General as above provided, file a petition in the Court of Claims of the United States, setting forth his right or title and the amount claimed by him as damages for the property taken or injury sustained; and the said court shall hear and adjudicate such claims in the same manner as other claims against the United States are now by law directed to be heard and adjudicated therein: *Provided*, That the court shall make such special rules in respect to such cases as shall secure their hearing and adjudication with the least possible delay.

" Judgments in favor of such claimants shall be paid as other judgments of said court are now directed to be paid; and any claimant to whom a tender shall have been made, as hereinbefore authorized, and who shall have declined to accept the same, shall, unless he recover an amount greater than that so tendered, be taxed with the entire cost of the proceeding. All claims for value or damages on account of ownership of any interest in said premises, or on account of injury to a property right by the construction of said works, shall, unless

a petition for the recovery thereof be filed within one year from the date of the first publication of notice by the Attorney General as above directed, be forever barred: *Provided,* That owners or claimants laboring under any of the disabilities defined in the statute of limitations of the District of Columbia may file a petition at any time within one year from the removal of the disability.

"Upon the publication of the notice as above directed, the Secretary of War may take possession of the premises embraced in the survey and map, and proceed with the constructions herein authorized; and, upon payment being made therefor, or, without payment, upon the expiration of the times above limited without the filing of a petition, an absolute title to the premises shall vest in the United States.

"SEC. 2. That the Secretary of War be, and is hereby, authorized and directed . . . to complete the dam at Great Falls to the level of one hundred and forty-eight feet above tide, and extend the same at that level across Conn's Island to the Virginia shore; and that he raise the embankment between the Potomac River and the Chesapeake and Ohio Canal above the dam, so as to protect the canal from the increased flooding which the completion of the dam will cause in times of high water, or pay to the canal company, in full satisfaction for all such flooding, the amount hereinafter appropriated for that purpose.

"SEC. 3. That the following sum or so much thereof as may be necessary is hereby appropriated out of any money in the Treasury not otherwise appropriated: . . .

"To pay for water rights and land necessary to extend dam at Great Falls to the Virginia shore, forty-five thousand dollars.

"For work and material to complete the dam at Great Falls to the level of one hundred and forty-eight feet above tide, and extend the same to the Virginia shore, one hundred and forty-five thousand one hundred and fifty-one dollars. . . .

"To protect the Chesapeake and Ohio Canal from increased flooding by reason of completing the dam at Great Falls, twelve thousand three hundred dollars.

"To provide for the erection of suitable fish-ways at the Great Falls of the Potomac, and at the dam to be constructed under the provisions of this act, in accordance with plans and specifications to be prescribed by the United States Commissioner of Fish and Fisheries, fifty thousand dollars, or so much thereof as may be necessary."

The defendants are Augustus H. Garland, Attorney General of the United States; William C. Endicott, Secretary of War; Garrett J. Lydecker, Major of Engineers in the United States Army, having charge, under the Secretary of War, of the construction of the before mentioned dam, from Conn's Island to the Virginia shore; and George B. Chittenden and Samuel H. Chittenden, contractors with the Secretary of War for said work.

The plaintiff in its bill alleges that it is the owner in fee of Conn's Island; of other tracts of land in the Potomac River above that island, being the several islands known as the Cyclades; of a tract of about one thousand acres in Virginia, on that river, at the Great Falls, known as the Toulson Tract; and of all the easements, rights of water, use, navigation, privileges, and fisheries appertaining to those several tracts or bodies of land. The value placed by the plaintiff upon said water rights is shown by the allegation that the water at the Great Falls "being of great purity, and 148 feet above the mean tide at Washington City, forms the best, most convenient, and almost the only supply of pure water for the capital of the United States, which will flow by its own weight, and without the cost of pumping, into the highest habitations of said District, thus furnishing an unlimited supply of water for domestic use and extinguishment of fires." The bill recites the facts connected with the award of February 28, 1863, and, after stating the circumstances under which it recovered said judgment against the United States in the Court of Claims, refers to the provisions of the act of July 15, 1882. It alleges that the Secretary caused to be made a survey and map, but that they were not sufficiently accurate to be the foundation of proceedings for the condemnation of plaintiff's land and water rights to the public use. Referring to the notice of such sur-

vey and map as published by the Attorney General, it alleges that the only claim made by that officer as to said land and water rights was the following contained in such notice: "In addition to acquiring to and for the United States any outstanding title to these lands at the Great Falls, it is also proposed to acquire all water rights implied in the possession of the same or needed for purposes contemplated by the act under which these proceedings are taken. The map of the surveys (in these tracings) required for the uses enumerated in the above named act of 1882, c. 294, may be seen at this department by all claimants to any portion of said premises."

The lands above referred to are thus described in the same notice:

"1st. For extending the dam to and upon the Virginia shore, it is proposed to take and acquire title to a strip about 918 feet wide, crossing Conn's Island and the Virginia channel, and connecting the United States property on Fall's Island and Hard-to-come-at, with the United States property on the Virginia shore. This will extend the present limits of the United States property on the Virginia shore to the south, by taking in a triangular lot containing about 8–10 acres.

"This tract is colored in yellow on tracing C."

The bill charges that, "although no notice of any taking has been given in the manner prescribed by law, and although no act has been done which would justify him in so doing, the Secretary of War, in the year 1883, by his servants and agents, wrongfully took possession of the lands of your complainant, claiming to have done so in behalf of the United States, in the State of Maryland and in Virginia, which land was not within any description made, surveyed, or traced by the Secretary of War, and has used said land for the purpose of constructing a dam along a portion of said land across Conn's Island and over said river to the Virginia shore, and has built a large portion of said dam by means of his said servants and agents without making any bulkhead in said dam or any provision whatever by which your complainant can use any portion of the water for manufacturing or other valuable purposes, as was awarded by the arbitrators in their award as aforesaid in favor of your

complainants, the dam to be constructed after the manner of Plan A. And your complainant is informed and believes, and therefore avers, that the War Department of the United States has occupied said land with a force sufficient to prevent any opposition of your complainant to its acts and doings, or the acts and doings of its servants, agents, and employés without a breach of the peace of the State of Maryland."

It is also averred in the bill that the plaintiff waited, after several applications by it, both verbally and in writing, to the Attorney General and Secretary of War, until the last day before the year limited by said act in which claims might be filed in the Court of Claims for damages, expecting that steps would be taken by which its land and water rights might be legally taken by the United States in such form that it could obtain reasonable compensation for such property; and that nothing being done, from great caution and fear lest it might lose all benefit of any provision of said act by limitation, it then filed a petition in that court, setting forth its claim in order to save its rights, and for no other purpose whatever. But it protests that what the Secretary of War and the Attorney General did are simple trespasses and wrongs done to the plaintiff, and that for the want of legal steps on their part, for the condemnation of its property, the Court of Claims is without jurisdiction to ascertain and award compensation to it.

The bill concludes with the averment that, even if the provisions of the act of Congress had been strictly followed, the steps taken by the Secretary of War and the Attorney General would not be justified in law, because the act under which they claimed to proceed is unconstitutional and void. The grounds upon which its validity is assailed will be hereafter indicated.

The relief asked is a decree restraining defendants and each of them from further occupying the plaintiff's lands and premises or from building any structure thereon, or in any way hindering or interfering with the natural flow of the water between Conn's Island and the Virginia shore; that the defendants and each of them be required to remove and cause to be removed every structure, dam, and embankment heretofore

erected by them or by any officer of the United States, acting in their behalf in the premises; that if it shall appear that its land and water rights have been legally condemned to the use of the United States, an issue be framed, triable by a jury, for the ascertainment of the compensation due the plaintiff, and that it have judgment for the amount so found in its favor; and that all persons, claiming to act 'for or on behalf of the United States, be restrained from occupying or in any way interfering with said land and water rights until the amount of such judgment be paid or tendered to plaintiff, or paid into court for its use.

In the court below a demurrer to the bill was sustained, and the plaintiff declining to amend, its suit was dismissed with costs. *Great Falls Manufacturing Co.* v. *Garland*, 25 Fed. Rep. 521.

*Mr. Benjamin F. Butler* and *Mr. O. D. Barrett* for appellant.

I. The act of 1882 in its provisions is unconstitutional: (1) In that it does not take private property for public use. Instead thereof it takes land and water-power, the property of the United States under the award, but for which the Government has not paid compensation to the owner: (2) In that the act tends to avoid an adjudication and determination of damages for land already taken by the United States by a new taking: (3) In that the act tends to avoid and set aside a compact with a sovereign State for the making of which the Government has received consideration from the State and its citizens, to which the faith of the Government is solemnly pledged: (4) In that it takes private land and water privileges in that State without the assent of the State of Maryland, or any cession of jurisdiction thereof, for the use of the inhabitants of Washington and Georgetown:

II. It is unconstitutional in that it does not provide for a constitutional and impartial tribunal to assess and determine the damages or compensation for the private property taken, if the taking is a "purchase" or condemnation in these: (1) It provides for a valuation of land and water rights taken, for the

purpose of fixing just compensation for the taking by appraisers, all appointed by an agent of the Government only, and does not provide any notice to the injured party to take part in such appointment, or to be present, or heard at the appraisement. And the only provision for compensation is a tender of such valuation, and to get that, a deed of its land must be executed at his own expense by the injured party: (2) It provides that such appraisers shall not consider the true and just value of the property taken or injured as compensation, in these words: "In making the valuation the appraiser shall only consider the present value of the land, without reference to the value for the uses for which it is taken, under the provisions of this act:" (3) It does not provide for a constitutional tribunal by which damages and compensation shall be assessed for private lands taken for a public use, such controversy being a "suit at law," the trial by jury was not provided, nor any tribunal whose judgment as to compensation can be enforced; nor is any pledge of the faith of the Government that said compensation shall be paid, or any payment ordered, save in case such appraisement is accepted: (4) In this, that it provides as the only tribunal, the Court of Claims, which has no power to enforce the payment of any of its decisions, or to adjudicate cases or suits like the present, where specific performances of contracts is to be adjudged and enforced: (5) In that the act does not provide, nor is there any other provision of law by which the compensation for the property taken shall be paid, or any fund from which it shall be paid, save such as may hereafter be voted by the legislature, and approved by the accounting officers of the Treasury.

Under this head they cited as to the first and second propositions: *Rhine* v. *McKinney*, 53 Texas, 354; Cooley's Constitutional Limitations, 656; *Great Laxey Mining Co.* v. *Clague*, 4 App. Cas. 115; *Nicklin* v. *Williams*, 10 Exch. 259; *Hamer* v. *Knowles*, 6 H. & N. 454; *Lamb* v. *Walker*, 3 Q. B. D. 389; *Boom Co.* v. *Patterson*, 98 U. S. 403; and as to their right to a trial by jury: *Charles River Bridge* v. *Warren Bridge*, 11 Pet. 420; *Doe* v. *Stetson*, 8 Greenleaf, 365; *Isom* v. *Mississippi Central Railroad*, 36 Mississippi, 300; *Raleigh & Gaston Rail-*

*road* v. *Davis*, 2 Dev. & Bat. Law, 451; *Evansville &c. Railroad* v. *Miller*, 30 Indiana, 209; *Plank Road Co.* v. *Pickett*, 25 Missouri, 535; *Kohl* v. *United States*, 91 U. S. 375; *Mitchell* v. *Illinois & St. Louis Railroad*, 68 Illinois, 286; *Lake Shore Railroad* v. *Sanford*, 23 Michigan, 418; *Whitehead* v. *Arkansas Central Railroad*, 28 Arkansas, 460; *Burt* v. *Merchants' Ins. Co.*, 106 Massachusetts, 356; *Jones* v. *United States*, 109 U. S. 513; 2 Kent Com., 12th ed., 239, note f.; *Bloodgood* v. *Mohawk & Hudson River Railroad*, 18 Wend. 9; *S. C.* 31 Am. Dec. 313; *Gardner* v. *Newburgh*, 2 Johns. Ch. 162; *S. C.* 7 Am. Dec. 526; *Southwestern Railroad* v. *Southern & Atlantic Telegraph Co.*, 46 Georgia, 43; *Ligat* v. *Commonwealth*, 19 Penn. St. 456; *Penrice* v. *Wallace*, 37 Mississippi, 172; *Brown* v. *Beatty*, 34 Mississippi, 227; *Talbot* v. *Hudson*, 16 Gray, 417; *Orr* v. *Quimby*, 54 N. H. 590; *Connecticut River Railroad* v. *Franklin County Commissioners*, 127 Massachusetts, 50; *Haverhill Bridge Proprietors* v. *Essex County Commissioners*, 103 Massachusetts, 120; *Callison* v. *Hedrick*, 15 Grattan, 244; *Green* v. *Mich. Southern Railroad*, 3 Michigan, 496; *Jackson* v. *Winn's Heirs*, 4 Littell, 323; *Charleston Branch Railroad Co.* v. *Middlesex*, 7 Met. 78; *White* v. *Nashville &c. Railroad*, 7 Heiskell, 518; *Simms* v. *Memphis &c. Railroad Co.*, 12 Heiskell, 621; *State* v. *Messenger*, 27 Minnesota, 119; *Loweree* v. *Newark*, 38 N. J. Law, (9 Vroom,) 151; *Long* v. *Fuller*, 68 Penn. St. 170; *People* v. *Hayden*, 6 Hill, 359.

III. The Circuit Court erred in this: Assuming the provisions of the act to be within the purview of the Constitution, and the manner of taking as described by the act is not in any of its parts constitutionally objectionable, the court should have overruled the demurrer, and granted the relief sought for by the bill by some proper order and decree in favor of your orator: (1) Because it was the duty of those charged with the execution of the act to carry out and enforce every provision thereof in relation to purchasing and to "acquiring said land and water rights," and providing for valuation and appraisement thereof, and so to do all things that your orator might get relief in the premises without any delay except that

of urgent necessity. As to all and each of which duties, doings, and things to be done, prescribed by said act relative to your orator or his said lands, said officers or either of them did nothing: (2) Because that the Secretary of War and his officers and agents became trespassers *ab initio*, by entering upon the lands of your complainant and taking possession of them. By the provisions of said act, " upon the publication of the notice as above directed, the Secretary of War may take possession of the premises embraced in the survey and map, and proceed with the constructions herein authorized ; and upon payment being made therefor, or without payment upon the expiration of the time above limited, without the filing of a petition, an absolute title shall vest in the United States ; " and no surveys or proper map embracing the lands had been made by him, as is charged in the bill, and as is admitted by the demurrer ; nor was any provision for payment made ; and, without payment or provision for payment, Congress cannot vest an absolute title to the lands of the citizen in the United States : (3) Because, if the officers charged with the execution of this act, do on the land anything not authorized and directed by the act, or take any other and different, or more property, or for any other purpose than they are permitted by the act, then such officers become trespassers *ab initio*, and should be enjoined, and other relief against them be afforded.

To these points they cited: *Kelley* v. *Horton*, 2 Cowen, 424 ; *Carpenter* v. *Grisham*, 59 Missouri, 247 ; *McCord* v. *High*, 24 Iowa, 336 ; *Beckwith* v. *Beckwith*, 22 Ohio St. 180 ; *Newell* v. *Wheeler*, 48 N. Y. 486 ; *Stockett* v. *Nicholson*, Walker (Miss.), 75 ; *Mayor &c.* v. *Delachaise*, 22 La. Ann. 26 ; *Dyckman* v. *Mayor &c. of New York*, 5 N. Y. (1 Selden), 434 ; *Burt* v. *Brigham*, 117 Mass. 307 ; *Reitenbaugh* v. *Chester Valley Railroad*, 21 Penn. St. 100 ; *United States* v. *Reed*, 56 Missouri, 565 ; *Currier* v. *Marietta & Cincinnati Railroad*, 11 Ohio St. 228.

*Mr. Solicitor General* for appellees.

MR. JUSTICE HARLAN, after stating the case as above reported, delivered the opinion of the court.

The bill alleges that the land and water rights described in the published notice of the Attorney General are substantially those which would have been taken if the United States had adopted and executed Plan A, as described in the report of the arbitrators in 1863. In respect to that plan, the arbitrators decided that if it were adopted and executed the plaintiff would be entitled to receive $63,766, and, in addition, to retain the right of using the remainder of the water, by means of proper canal and bulkhead appliances on the Virginia shore of the river. While the company contends that its enjoyment of the right so reserved cannot lawfully be interfered with, it is not clear that it means to insist upon the award of 1863, in respect to said amount, as absolutely binding upon the United States in proceedings had under the act of 1882. It will be remembered that the award of 1863 covered four alternative plans for the Potomac dam of the Washington aqueduct. The United States adopted and executed only Plan 4, and thereby manifested its purpose not to adopt and execute Plan A. Neither the Government nor the company is bound by that award, so far as it relates to plans which the United States did not adopt and execute. The present inquiry in respect to land or water rights taken from the plaintiff must, therefore, be conducted with reference to their value — not in 1863, when the Government declined to take them, but — in 1883, at the time of their being condemned for public use under the act of 1882. It is, consequently, an immaterial circumstance that the award of 1863 reserved to the company, as against the United States, the right to maintain a canal and bulkhead across and upon the land of the United States, on the Virginia shore of the Potomac. No such reservation is made by the act of 1882, and the officers charged with its execution were not required to concede any such right, though, of course, the United States are bound to make just compensation to the company for property rights of whatever description taken from it for, and appropriated to, public use.

Much stress seems to be laid upon the allegation in the bill — which the appellant insists must be taken as true — that the Secretary of War, by his servants and agents, took possession of

lands of the plaintiff, which are "not within any description made, surveyed, or traced." by him, and has used the same for the purpose of constructing the proposed dam across Conn's Island and to the Virginia shore. As the act of Congress provided that the Secretary of War, upon the publication by the Attorney General of the required notice, "may take possession of the premises embraced in the survey and map," it is contended that his possession of the company's land and water rights is without authority of law, and constitutes a mere trespass; in which case, it is argued, the United States are not legally bound to make compensation to the plaintiff. It is clear that the allegation that the lands taken for the purposes of the dam in question are not embraced by the survey, is not to be literally construed. The plaintiff surely does not mean that all the lands taken by the Secretary are outside of the survey made under his order; but, only that such lands are not entirely within its limits, and that the survey was not sufficiently accurate "to be the foundation of passing the title to the land and water rights" of the complainant "necessary to be taken for the purposes of said act." The plaintiff admits that a survey was, in fact, made, and that the Attorney General published a notice based upon it. And there is no suggestion that the Secretary has taken any land other than that intended to be embraced within the survey, of which the Attorney General gave notice by publication. Taking all the allegations of the bill together, we understand the complaint only to be that the survey and notice were not such as in law justified the Secretary of War in taking possession of the lands upon which the proposed dam was being constructed when the suit was brought. But even if it be true that some part of the land actually occupied by the Government is not within the survey and map, still the United States are under an obligation imposed by the Constitution to make just compensation for all that has been in fact taken and is retained for the proposed dam. While Congress supposed that a survey and map could be made with such accuracy as to embrace all the land necessary, under any circumstances, for the purposes indicated in the act of 1882, and while provision is made whereby the

owners of lands, covered by such survey and map, can obtain just compensation, the act also opens the Court of Claims to every person who, by the construction of the works in question, has been injured in any property right, provided that, within a given time, such person file his petition in that court, setting forth his right or title and the amount claimed by him as damages. So that if the Secretary of War, who was invested with large discretion in determining what land was actually required to accomplish in the best manner the object Congress had in view, found it necessary to take, and has. taken and used, and still holds lands of the plaintiff for the proposed dam, which happen not to be covered by the survey and map, the United States are as much bound to make just compensation therefor as if such lands had been actually embraced in that survey and map. Of course, we are not to be understood as saying that the Secretary of War could, by any act of his, bind the United States to pay for lands taken by him which, manifestly, had no substantial connection with the construction of the dam across Conn's Island to the Virginia shore. It is sufficient to say that the record discloses nothing showing that he has taken more land than was reasonably necessary for the purposes described in the act of Congress, or that he did not honestly and reasonably exercise the discretion with which he was invested; and, consequently, the Government is under a constitutional obligation to make compensation for any property or property-right taken, used, and held by him for the purposes indicated in the act of Congress, whether it is embraced or described in said survey or map, or not. *United States* v. *Great Falls Manufacturing Co.*, 112 U. S. 645, 656.

In reference to the allegation that the survey and map made by the Secretary were not sufficiently accurate, and that the notice published by the Attorney General was materially defective, it may be further said that all such objections were waived by the company when, proceeding under the act of 1882, it invoked the jurisdiction of the Court of Claims to give judgment against the United States for such compensation as it was entitled to receive for its land and water rights. Even

if the Secretary's survey and map, and the publication of the Attorney General's notice did not, in strict law, justify the former in taking possession of the land and water rights in question, it was competent for the company to waive the tort, and proceed against the United States, as upon an implied contract, it appearing, as it does here, that the Government recognizes and retains the possession taken in its behalf for the public purposes indicated in the act under which its officers have proceeded.

It is, however, contended that the act is, in all of its parts, unconstitutional and void. The grounds upon which the plaintiff rests this contention are: that the act makes no provision by which compensation for property taken under it can be constitutionally adjusted and determined; that it does not provide for the ascertainment of such compensation by the verdict of a jury; that it compels the plaintiff to have recourse to the Court of Claims, which is a court unknown to the Constitution, being neither a court of equity such as was known at the adoption of that instrument, nor a court of law proceeding according to the rules of the common law, but only a board of referees, constituted by one party to hear such cases as another party will consent to submit to its determination, and without power to enforce its judgment against the party by whom it is created; and that it directs property to be taken and the owner thereof dispossessed, without making provision for just compensation.

These are questions of much interest, and their examination, in the light of the authorities, might not be altogether unprofitable. But this opinion need not be extended for the purpose of such an examination; for the questions propounded are not material in the determination of the present case. They have become immaterial by the act of the plaintiff in instituting suit against the United States in the Court of Claims. In that suit compensation was sought for its property taken for public use, while the present suit proceeds upon the ground that it has not been lawfully taken, and that it is entitled to be placed in possession thereof. Congress prescribed a particular mode for ascertaining the compensation which claimants of

property taken for the purposes indicated in the act of 1882 were entitled to receive. It gave them liberty to proceed by suit against the United States before a designated tribunal, which, since the passage of the act of March 17, 1866, 14 Stat. 9, has exercised "all the functions of a court," from whose judgment appeals regularly lie to this court. *United States* v. *Klein,* 13 Wall. 145; *United States* v. *Jones,* 119 U. S. 477; *Gordon* v. *United States,* 117 U. S. 697. The plaintiff, by adopting that mode, has assented to the taking of its property by the Government for public use, and has agreed to submit the determination of the question of compensation to the tribunal named by Congress. By the very act of suing in the Court of Claims, under the statute of 1882, it has not only waived the right, if such right it had, to compensation in advance of the taking of its property, but the right, if such it had, to demand that the amount of compensation be determined by a jury. By the same act it has estopped itself from suggesting that no judgment obtained in the Court of Claims can be enforced against the United States, but must await an appropriation for its payment. When it resorted to that court, it knew that its judgments against the United States could only be paid out of money appropriated for that purpose by Congress. In short, the plaintiff has voluntarily accepted the provisions of the act of Congress in respect to the mode of ascertaining the compensation to be made to it. This view cannot work any permanent injury to the plaintiff; for that act expressly declares that the absolute title to the premises in question shall not vest in the United States until the owner receives payment therefor; that is, the Government holds the premises for public use, subject to the condition imposed by the Constitution, and by the act of Congress, that it will, without unreasonable delay, make such compensation therefor as may be awarded by the tribunal to which the whole subject has been submitted. It is to be assumed that the United States is incapable of bad faith, and that Congress will promptly make the necessary appropriation, whenever the amount of compensation has been ascertained in the mode prescribed by the act of 1882.

It is scarcely necessary to say that it is immaterial that the plaintiff invoked the jurisdiction of the Court of Claims from fear that, if it did not file its petition in that court within the time limited, it might lose the right to demand compensation for its property. If the act of the Secretary of War in taking possession of the property was in violation of law, neither, he nor his agents could rightfully hold possession against the plaintiff; in which case, the plaintiff might have stood upon its rights, under the Constitution, and invoked judicial authority for such protection as the law would afford against the unauthorized acts of public officers. But the plaintiff chose to acquiesce in the taking of its property for public use, and to accept the offer of the Government to have the amount· of compensation fixed by the Court of Claims, according to its peculiar modes of procedure. The reasons inducing it to adopt such a course can have no influence upon the action of that court, nor affect its power to ascertain and award just compensation for the loss of the property.

Upon the case as presented to us, and without intending to express doubt as to the constitutionality of the act of July 15, 1882, we are of the opinion that there is no obstacle in the way of the plaintiff's securing, by means of its suit in the Court of Claims, and without unreasonable delay, just compensation for all of its property taken for the public use indicated in the act of Congress; and, consequently, the decree dismissing its bill is

*Affirmed.*