Ho wet, J.,
delivered the opinion of the court:
The voluminous record in this cause (comprising several thousand pages), the character of the evidence, expert and otherwise, and the numerous exhibits pertaining to tlie art of pneumatics; tlie alleged appropriation by Government of plaintiff’s patented invention for transmitting mail by means of pneumatic tubes; the enormous sum demanded as damages ($20,000,000) upon the theory of contract for the use of plaintiff’s alleged improvements, and the persistence with which plaintiff has urged his complaint in the Executive *140 Departments ancl in this court, combine to make this case one of unusual character and interest. The view we take of the controversjr brings the questions within a somewhat narrow compass, but it is believed that every issue of fact and law necessary to a right determination has been considered within the limits of this opinion.
Eliminating all questions relating to the alleged infringement of plaintiff's improvements for the present, not only for want of jurisdiction of the alleged tortioi^Laatek but also because of the amended petition which proceeds entirely upon the assumption that a contract existed with the plaintiff, the first thing to consider is the authority of the Postmaster-General and the action taken under that authority on the proposals.
The first dealing of the Government for the more rapid dispatch of mail matter between large cities and post-offices stations and .transportation terminals by means of pneumatic tubes limited the authority of the Postmaster-General. Section 6 of the Post-Office appropriation act of July 13, 1892 (27 Stat. L., 145), provided: “That the Postmaster-General is hereby authorized and directed to examine into the subject of a more rapid dispatch of mail matter between large cities and post-office stations and transportation terminals located in large cities by means of pneumatic tubes or other systems, and make report upon the expense, cost, and advantages of said systems when applied to the mail service of the United States, and the sum of ten thousand dollars is' hereby appropriated therefor.”
Pursuant to this authority the Postmaster-General published in several newspapers the advertisement set forth in the findings and under date of August 30, 1892, plaintiff answered, mailing a proposal stipulating that the same should not be binding upon him unless the conditions of his letter containing his proposal should be accepted by the United States and that he should be notified of said acceptance on or before the 1st day of August, 1893.
September 15, 1892, the Postmaster-General appointed a commission of three expert postal officials, as required by the appropriation act, to examine into the merits of the pneumatic tubes and other systems advertised for. This commis *141 sion reported on September 29, 1892, that they had examined into the merits of pneumatic tubes and other systems set forth in the advertisement and that 8 separate proposals .were regularly presented within the time mentioned in the advertisement.
Among the "8 mentioned by the commission notice was taken of the plaintiff’s proposal, accompanied by the statement that it appeared to the commission from his bid that he would make a contract to construct experimental lines for a consideration to be mutually agreed upon and would sell or lease the same upon the condition that the experimental line was to- be in readiness within four to twelve months from October 1, 1892. The report of the commissi op was accompanied by a statement that one proposal (not ■ plaintiff’s) had been made without obligation on the part of the Government to purchase or rent, which was more favorable than any other; and for that reason and because no one of the other bids offered any definite terms in giving a specific service of a practical character within the near future, this proposal was recommended for acceptance.
An offer (submitted by the company with which plaintiff had no connection) to put down pneumatic tubes to connect two offices in the streets of Philadelphia without expense to the Government and without charge for one year’s use of the same and without liability thereafter was the one recommended as highly advantageous, because it would enable the Postmaster-General to make an immediate and practical test of the pneumatic system. The recommendation was emphasized by the statement that an arrangement could be made with the designated company for the construction of an experimental line without passing upon the merits of the system itself, which, in the opinion of the commission, was a matter to be considered after the experiment. This left the commission the opportunity, which was stated by them to be their purpose,'to give future consideration to each one of the systems submitted b}^ the various bidders on the original call for bids in that behalf.
Under the contention of express contract, it must be noted that correspondence not arising out of the advertisement *142 and plaintiff’s immediate responses thereto but subsequent to the occasion which called forth the bids and action upon them is inadmissible to establish the alleged express agreement. The advertisement called for a full description of the tube or device, the kind and quantity of motive power used in operating the same, the method of its application, and the capacity of the tube and apparatus. It likewise called for an offer to submit a test; for the precise place and terminals where it should be proposed to conduct the test; for the date at which the tube or device would be in condition to be tested, and the time that would necessarily be occupied in making a test; and, generally, anything else whereby the Postmaster-General could judge of the relative value of the several tubes or devices that might be submitted and the adaptability of each to the service proposed to be inaugurated if the tests justified anything beyond the experimental stage of the matter.
Plaintiff’s response to the advertisement did not give the information which enabled the Postmaster-General to judge of the value of his letters patent. It was not letters patent alone that were called for by the advertisement, as plaintiff seems to have supposed, but tubes or devices in a condition toJiíi-tfistaíLat a time- and place to be mentioned by the person answering the bid, so that the Postmaster-General could judge of the value of the tubes under experiments to be made for the contemplated service. It was not incumbent on the plaintiff to transmit his letters patent at all except as they met the conditions of the advertisement with the other things called for. There ivas nothing contained in the original proposition of the plaintiff in answer to the advertisement which included an <tfiÜr,to submit any test at all. The precise place and terminals where it was proposed that the test should' be conducted were omitted by him. Details as to the date at which plaintiff’s tube or device would be in condition to be tested and the time that would necessarily be occupied in making the test were ignored.
It is clear that the plaintiff’s bid was entirely insufficient to establish anything like an agreement to pay him anything. The advertisement and plaintiff’s bid under it made none, and the general correspondence made none. On the face *143 of tbe act carrying a small appropriation for an examination into the subject there-was no authority given by the lawmaking power to any of its officers or agents to bind the Government to the payment of anything. The act carried its own limitations and plaintiff was bound to know this independent of the advertisement. In the experimental stage of the matter which Congress wisely provided for, the Postmaster-General was without authority to contract with anybody for the permanent use or purchase of any kind of a patent.
Under an agreement made October 20, 1892, between the Pneumatic Transit Company of New Jersey and the United •States, it was provided that the party of the first part should be permitted to enter the post-office building at Philadelphia and lay at its expense a line of two parallel pneumatic iron tubes connecting the main office with a suboffice of that city. The company was to pay all expenses connected with the construction, maintenance, and operation of the tubes and to remove them when required. Upon completion of the work, at its expense, the company agreed to turn over these pneumatic tubes and all the appurtenances connected with their operation to the Post-Office Department for the period of one year from the date of the completion of the tubes for such practical tests as might be given to their operation, but without cost to the United States. At the expiration of one year from completion or at any intermediate date the company further agreed to lease these pneumatic tubes to the United States year by year, or to sell, assign, and transfer the same to the Government at the cost of the .company, including authority for the use by the Government of all the inventions in said pneumatic tubes and the appurtenances and devices' connected with them, which at the time of the contract were covered by letters patent or which at the subsequent time stated might be covered by letters patent, by license, sale, or assignment. Similar contracts were entered into by the-Postmaster-General for like transportation of mail at’ New York, Brooklyn, and Boston. These preliminary contracts were the basis of the authority subsequently given by Congress to the Postmaster-General to contract for the permanent system which 4s now in use *144 because it appears that these tests were ultimately successful.
Subsequently, and after much delay and the grant of letters patent for improvements upon the original patents, Congress provided (32 Stat. L., 114) for the transmission of mail by pneumatic tubes or other similar devices. They appropriated, by this act approved April 21, 1902, for the service of the Post-Office Department for the fiscal year ending June 30, 1903, $500,000, payable to contractors under the authority of the Postmaster-General for a period not exceeding four years for the transmission of mail by pneumatic tubes. Public advertisement ivas required to be made where tho service was to be performed, and contracts for this service were made subject to the provisions of the postal laws and regulations relating to the letting of mail contracts except as otherwise provided by the act. No advertisement authorizing contractual relations with anyone was permissible until after a careful investigation as to the needs and practicability of such service. The act authorized the rejection of any and all bids, and no contract was to be awarded except to the lowest responsible bidder tendering-full and sufficient guaranties to the satisfaction of the Postmaster-General of the ability of such bidder to perform satisfactory service, and these guaranties were to include an approved bond in double the amount of any bid. The Postmaster-General was forbidden to enter into contracts prior to June 30, 1904, under the provisions of tho act, and the contracts were not to involve an annual aggregate expense in excess of $800,000, but such contracts only were authorized subsequent thereto as might from time to time be provided for in future annual appropriation acts for the postal service. All provisions of law contrary to those contained in this act of 1902 were in terms repealed.
Out of these acts of Congress, first for experiments and finally for contracts through the Postmaster-General, has arisen the plaintiff’s alleged cause of action on the theory now to be stated.
The allegations of the petition next attempt to make a case of contract, partly in writing and predicated on the original advertisement and correspondence, and partly in parol, *145 founded, upon the use charged of plaintiff’s inventions in pneumatic tubes and devices by the Government under the authority of Congress. The petition alleges that plaintiff’s proposal authorizing the use of his inventions has never been returned to him and that no offer has ever been made to recon-vey to him his letters patent as they were submitted to the Postmaster-General pursuant to public advertisement, but that his proposal has been retained and is wholly under the control of the Government, so that he is deprived of all power over his letters patent and ox all opportunity to maintain suit for their infringement; that the Government has directly or indirectly entered into the use and enjoyment of his inventions ; that by reason of the execution of his proposal in writing and by reason of the retention of the proposal and by reason of the uses aforesaid, plaintiff alleges that the United States have assented to the terms of his proposal and become liable to pay. These allegations attempt to make a case for which plaintiff as the party performing thinks he is entitled to recover the fair value of his property as upon an implied contract for a quantum merv.it. That is to say, that if the alleged express contract be uncertain plaintiff is entitled to fall back upon the rights which resulted to him from what he thinks is the implied agreement.
Inasmuch as the forms of pleading in this court are not of so strict a. character as to preclude plaintiff from proceeding upon the theory of an implied contract, this phase of the complaint will be considered. The question comes to the use and the manner of the use of the inventions and the authority under which pneumatic tubes for the transmission of mail Avere employed.
Plaintiff has exhibited drawings and specifications of his inventions, which he says were the same found by him to be in the rise and enjoyment of the Government in the Philadelphia post-office. On this point, and as to the methods in use for transmitting mail matter, there is a vast amount of conflicting testimony of an expert as well as of a general character.
There is included in the list of patents issued by the Patent Office before plaintiff applied for any of his improvements: *146 Needham’s, patented 1864; those of Wood in 1867; A. E. Beach (not plaintiff) in 1869; Siemens in 1873; Dowd’s in 1875; Leaycroft’s in 1876; B,andolph’s in 1876; Hatch’s in 1879, and Ely’s in the same year. (Horen’s patent was issued about the time of plaintiff’s first invention.) As all of these inventions antedated the alleged improvements which plaintiff says he made upon them, and rights under most of these letters had expired by limitation, they were open to experiment and use by anyone, which included the Government.
The Pneumatic Transit Company, which was incorporated under the laws of the State of New Jersey in 1892, had in its employ one Birney C. Batcheller as an engineer. This engineer designed some of the terminal apparatus that was first used and a system of tubes and devices which carried mails pneumatically was constructed under his direction and supervision. Defendants contend that Batcheller’s patents were used by the company with which the Government contracted, and it also appears from the report of the expert commission that in the main the Siemen’s patent was drawn upon in the subsequent contracts in connection with the improvements which Batcheller supplied. It may be. that all of the improvements designed subsequent to those of the plaintiff were utilized. Of this, however, we are not certain, nor is it material for reasons which hereafter appear. It does reasonably appear, and is material to state that some of the mechanism designed by this engineer is now in use by the system adopted by the. Post-Office Department. When these improvements were first used we do not know. These probably include ideas embodied in some of the various inventions granted many years ago, but seem to show improvements not appearing in the Beach (plaintiff’s) patents, such as an eccentric shaft for carrier, patented in 1895; gate for open receiver, patented in 1896; electro-pneumatic circuit-closer, bearing rings of layers of treated cloth, electric time lock for substation, valve for releasing receiver of trams, receiver, and sender, all of which were patented in 1897; chronograph, patented in 1898, and switch mechanism, cradle trams with lever release, eccentric carrier lid, closed receiver, open receiver, and regulating by-pass, patented in 1899; car *147 rier lid locked by detachable key, 8-inch carrier eccentric and fingered, inner carrier, packing device for annular joints, and water-tight carrier chain hinge, all patented in 1900; pipe coupling, patented in 1901; vertical transmitter, return tube open receiver, pneumatic time lock, patented in 1902; pressure system, intermediate machine, vertical sender for double gate, and improved valve finger, patented in 1903, and a double gate open receiver, patented in 1904.
These are novel improvements upon all preceding inventions. Some, at least, of these improvements (and it may be all) are in use under the present system. These, together with various parts of the mechanism derived from other inventions and notably the devices described in Sie-men’s patent, seem to us to have been used by the contracting company. We do not definitely decide that they were so used, but in our view of this case, all those details which have been presented in the effort to show that plaintiff’s property was appropriated, especially in the material allegations respecting the wave motion of plaintiff’s inventions (upon Avliich he largely rests his case), seem to be wanting in the element of identity with the tubes and mechanism finally combined and put into actual use by other agencies. The necessary things to make an implied contract (from the very inception of the matter) are thus wanting. Not only does the complaint not state the facts necessary to make a contract by implication, but the findings show as between the plaintiff and defendants continual antagonism from the time the expert postal commission made its report to the time when, the recommendations and subsequent investigations of tlie Postmaster-General led him to make a contract (with others) under the authority of Congress. The bidding having been competitive and the right having been given by law to the Postmaster-General to reject any and all bids, we must presume that right was properly exercised when contracts were made with others.
Although we might stop here, we deem it proper (while going no further into the merits of the complaint) to say that enough has been said on the facts to carry us to the reasons which underlie everything else in the case in the matter *148 of the right to proceed. The United States manufactured nothing. They acquired nothing substantial from plaintiff by the submission of his original letters patent, and they declined to act on any of his proposals. True, by the submission of the inventions to the officers of the Government gratuitous license to use the alleged improvements was never intended by Beach, nor was a tortious infringement contemplated by the United States. The use of an invention by the Government on contracts with others without the consent of the owners of letters patent is an infringement upon rights, but not a taking of property under an implied contract. In Schillinger's case (155 U. S. R., 163) (appealed from this court) it was held, citing Gibbons (8 Wall., 269), Morgan (914 Wall., 531), and Hill (149 U. S. R., 593), that the owner of letters patent for an invention who sets up in the Court of Claims that a contractor with the Government has made use of a patented invention in the execution of his contract without compensation to the claimant and against his protest, whereby there was a wrongful appropriation of the patent by the Government for its sole use and benefit, and that a right has accrued to him to recover of the Government the damages thus done to him, sets up a claim sounding in' tort of which this court has no jurisdiction. This case comes within the principles of that decision, although it does not appear here that Beach protested and objected to the use of the tubes and devices actually used, as it did appear in Schilling er1 s. case that the owner of the patent objected to the use by the Government of the patented invention shown there through the person with whom the Government contracted.
But here, as there, the Government contracted with another and independent party. That party was the company that claimed to own the inventions which by contracts with the Government the United States saw put into actual use. If the contracting company did not apply the Beach devices and the mechanism described in his letters, the cause of action comes to an end on the facts. If the contracting-company took Beach’s inventions and applied his ideas to practical use in the post-offices of the cities of the country *149 under its contracts with the Government, then the company has infringed upon plaintiff’s rights as an inventor. It is, in this event, liable for the infringement at the suit of the inventor, but not in this court. The matter of the infringement by the company is something to be determined elsewhere, and not here, between the party claiming the infringement and the company charged with invading patent rights. If the Beach inventions were put into actual use by the contracting company with knowledge by the officers and agents of the Government that the contractors were infringing plaintiff’s patents, those conditions would make such officers and agents with knowledge of the unlawful use wrongdoers with the contracting company, but for such a case sounding in tort this court is equally without jurisdiction to proceed. S chilling eSs case would cover this state of affairs in the matter of jurisdiction as much as if the facts here were exactly analogous to the facts shown in that complaint.
In this respect, as to the uses alleged by the plaintiff of his invention, the complaint counts upon a tort in which the contractors are ■ necessarily involved by the disclosures of the record. If plaintiff’s premises be true, that his property was appropriated by that company and used under its contracts with the Government in the Philadelphia post-office, the wrong would be with the company, as the Government appropriated nothing. And it should be stated here that there is no proof showing that the Government or any of its officers had knowledge of any unlawful appropriation of plaintiff’s invention by others.
Being without jurisdiction of the company, the sole thing left to determine is the relation of the Government to the matter. Treating any infringement upon his rights as distinct from plaintiff’s claim of compensation for an authorized use, there is wanting the admission that plaintiff had any title to the apparatus used. In Langford v. United States, 101 U. S. R., 341 (affirming this court), it was held that when an officer of the United States took and held possession of land of a private citizen under a clciim that the land belonged to the Government the United States *150 could not be charged upon an implied obligation to pay for its use and occupation. In United States v. Great Falls Mfg. Co. (112 U. S. R., 645, and 124 U. S. R., 581) it was subsequently held that if the United States appropriate to a public use land which they admitted to be private property they may be held as upon an implied contract to pay its value to the owner. So, in Hollister v. Benedict Mfg. Co. (113 U. S. R., 59) and United States v. Palmer (128 U. S. R., 262), title of the plaintiff was admitted. In United States v. Berdan Firearms Company (156 U. S.R., 552) a judgment of this court was sustained on an implied contract for the use of an improvement in breech-loading firearms; but there was no denial of the patentee’s rights to the invention.
In United States v. Lynah (188 U. S. R., 445) these authorities, with many others, were reviewed, and jurisdiction of the courts to subject the Government to the obligation of making compensation if there was a taking was sustained where the Government, in the exercise of its powers of eminent domain and regulation of commerce, through officers duly empowered by Congress, placed dams, draining walls, and other obstructions in the river in such manner as to hinder its natural flow and to so raise its waters as to overflow plaintiff’s land to such an extent as to cause a total destruction of its value. Two members of the court concurred as to jurisdiction on the ground stated in the opinion of the court, and also agreed with a third member in resting jurisdiction upon a taking within the meaning of the fifth'amendment to the Constitution irrespective of the question of contract or tort under that clause of the Tucker Act which vests the Court of Claims with jurisdiction of all claims founded upon the Constitution of the United States or any law of Congress. Three members of the court dissented on the subject of jurisdiction, as well as on the merits growing out of the character of the taking. The Government, not denying ownership of the land, admitted that the work which was done by their officers was done by authority of Congress, but denied that the work had produced the alleged injury and destruction. The principles declared do not conflict with the rule established in kSchillinger, sufra, nor do they declare Government liability *151 for the acts of those appropriating another’s invention and. using that other’s invention in contracts with the Government. Though it is possible in the case at bar that the company with whom the contracts for transmitting mail by means of pneumatic tubes infringed in more or less degree plaintiff’s inventions, it is not our province to go into that. But nothing appearing in the findings and conclusions of the court is intended to prejudice plaintiff in any right he may assert against individuals or companies contracting with the Government for unlawfully using his inventions. If he made improvements on the pioneer patents by the use of which others are deriving the extraordinary profits which the annual appropriations for the transmission of mail by means of pneumatic tubes indicate the way it is left open for him to pursue his remedy, if he has any. We have only gone into the merits far enough to define the reasons for dismissing the complaint for want of jurisdiction.
Reserving questions relating to the taxation of costs, the pefcitioBjs-dásmissed.
Barney, J., had not been commissioned when this case was tried and took no part in its decision.