## LANGFORD *v.* UNITED STATES.

1. As applicable to the government or any of its officers, the maxim that the king can do no wrong has no place in our system of constitutional law.

2. *Quære,* where lands which are confessedly private property are by the express authority of the government taken for public use, can the just compensation therefor which is guaranteed by the Constitution be recovered under existing laws in the Court of Claims?

3. That court has jurisdiction only in cases *ex contractu,* and an implied contract to pay does not arise where the officer of the government, asserting its ownership, commits a tort by taking forcible possession of the lands of an individual for public use.

4. The provision restricting that jurisdiction to contracts express or implied refers to the well-understood distinction between matters *ex contractu* and those *ex delicto,* and is founded on the principle, that while Congress is willing to subject the government to suits on contracts, which can be valid only when made by some one thereunto vested with authority, or when under such authority something is by him done which raises an implied contract, that body did not intend to make the government liable to suit for the wrongful and unauthorized acts which are committed by its officers, under a mistaken zeal for the public good.

5. If, under claim that they belong to the government, an officer seizes for the use of an Indian agency buildings owned by a private citizen, no implied obligation of the United States to pay for the use and occupation of them is thereby raised.

APPEAL from the Court of Claims.

The facts are stated in the opinion of the court.

*Mr. Benjamin F. Butler* and *Mr. Thomas Wilson* for the appellant.

*The Attorney-General* for the United States.

MR. JUSTICE MILLER delivered the opinion of the court.

This suit was brought by the plaintiff against the United States to recover for the use and occupation of certain lands

and buildings. The judgment of the Court of Claims was rendered against him, and he appealed here.

The first question arising in this case concerns the jurisdiction of the Court of Claims upon the suggestion of the Attorney-General that the claim is not founded on contract, either express or implied. That court could have no cognizance of the case on any other ground, according to the express language of the statute defining its jurisdiction. Rev. Stat., sect. 1059.

The findings of the court leave no doubt that the Indian agents acting for the United States, and without the consent of the American Board of Commissioners for Foreign Missions, took possession of the buildings which that board had erected upon the lands, and have since retained them by force and against its will or that of Langford, who claims title under it. The United States always asserted that their possession was by virtue of their own title, which was hostile to that of the claimant. The military of the United States was at one time ordered to protect by force the occupation of the agents.

Conceding that the title, or even the right to the possession of the premises, was in claimant, it would seem that the facts above stated show that the act of the United States in taking and holding that possession was an unequivocal tort, if the government can be capable of committing one, and that if the case were between individuals every implication of a contract would be repelled.

Counsel for claimant, admitting this to be true, makes a very-ingenious argument to prove that the government, in taking and using the property of an individual against his consent, and by force, cannot be guilty of a tort, because the nature of the relation of the government to its citizens, and the provisions of the Constitution, create an implied obligation to pay for property, or for the use of property, so taken. The argument rests on two distinct propositions: 1. That the maxim of English constitutional law, that the king can do no wrong, is one which the courts must apply to the government of the United States, and that therefore there can be no tort committed by the government. 2. That by virtue of the constitutional provision that private property shall not be taken for public use, without

just compensation, there arises in all cases where such property is so taken an implied obligation to pay for it.

It is not easy to see how the first proposition can have any place in our system of government.

We have no king to whom it can be applied. The President, in the exercise of the executive functions, bears a nearer resemblance to the limited monarch of the English government than any other branch of our government, and is the only *individual* to whom it could possibly have any relation. It cannot apply to him, because the Constitution admits that he may do wrong, and has provided, by the proceeding of impeachment, for his trial for wrong-doing, and his removal from office if found guilty. None of the eminent counsel who defended President Johnson on his impeachment trial asserted that by law he was incapable of doing wrong, or that, if done, it could not, as in the case of the king, be imputed to him, but must be laid to the charge of the ministers who advised him.

It is to be observed that the English maxim does not declare that the government, or those who administer it, can do no wrong; for it is a part of the principle itself that wrong may be done by the governing power, for which the ministry, for the time being, is held responsible; and the ministers personally, like our President, may be impeached; or, if the wrong amounts to a crime, they may be indicted and tried at law for the offence.

We do not understand that either in reference to the government of the United States, or of the several States, or of any of their officers, the English maxim has an existence in this country.

The other point is one which requires more delicate handling.

We are not prepared to deny that when the government of the United States, by such formal proceedings as are necessary to bind it, takes for public use, as for an arsenal, custom-house, or fort, land to which it asserts no claim of title, but admits the ownership to be private or individual, there arises an implied obligation to pay the owner its just value.

It is to be regretted that Congress has made no provision by any general law for ascertaining and paying this just compensation. And we are not called on to decide that when the

government, acting by the forms which are sufficient to bind it, recognizes the fact that *it is* taking *private* property for public use, the compensation may not be recovered in the Court of Claims. On this point we decide nothing.

What is pertinent to the present case is that, conceding that principle, it does not confer on that court the authority to decide that the United States, in asserting the right to use its *own* property, is using that of an *individual,* and in taking possession of such property under claim of title, and retaining it by force against an opposing claimant, has come under an implied contract to pay him for the use of the property. In the first case, the government admits the title of the individual and his right to compensation. This right to compensation follows from the two propositions, that it was private property and was taken for public use, neither of which is disputed.

It is a very different matter where the government claims that it is dealing with its own, and recognizes no title superior to its own. In such case the government, or the officers who seize such property, are guilty of a tort, if it be in fact private property. No implied contract to pay can arise any more than in the case of such a transaction between individuals. It is conceded that no contract for use and occupation would, in that case, be implied.

Congress, in establishing a court in which the United States may primarily be sued as defendants, proceeded slowly and with great caution. As at first organized, the Court of Claims was merely an auditing board, authorized to pass upon claims submitted to it, and report to the Secretary of the Treasury. He submitted to Congress such confirmed claims as he approved, with an estimate for their insertion in the proper appropriation bill. Such as he disapproved demanded no further action.

It was by reason of that feature of the law that this court refused to exercise the appellate jurisdiction over awards of that court which the act of Congress attempted to confer, because the court was of opinion that the so-called Court of Claims was not, in the constitutional sense, a court which could render valid judgments, and because there could be no appeal from the Supreme Court to the Secretary of the Treasury. *Gordon* v. *United States,* 2 Wall. 561. An act of Congress removing

this objectionable feature having passed the year after that decision, the appellate power of this court has been exercised ever since.   The jurisdiction of that court has received frequent additions by the reference of cases to it under special statutes, and by other changes in the general law; but the principle originally adopted, of limiting its general jurisdiction to cases of contract, remains.   There can be no reasonable doubt that this limitation to cases of contract, express or implied, was established in reference to the distinction between actions arising out of contracts, as distinguished from those founded on torts, which is inherent in the essential nature of judicial remedies under all systems, and especially under the system of the common law:

.The reason for this restriction is very obvious on a moment's reflection.   While Congress might be willing to subject the government to the judicial enforcement of valid contracts, which could only be valid as against the United States when made by some officer of the government acting under lawful authority, with power vested in him to make such contracts, or to do acts which implied them, the very essence of a tort is that it is an unlawful act, done in violation of the legal rights of some one.   For such acts, however high the position of the officer or agent of the government who did or commanded them, Congress did not intend to subject the government to the results of a suit in that court.   This policy is founded in wisdom, and is clearly expressed in the act defining the jurisdiction of the court ; and it would ill become us to fritter away the distinction between actions *ex delicto* and actions *ex contractu*, which is well understood in our system of jurisprudence, and thereby subject the government to payment of damages for all the wrongs committed by its officers or agents, under a mistaken zeal, or actuated by less worthy motives.

The question is not a new one in this court.

In *Nichols* v. *United States* (7 Wall. 122), where a suit was brought in the Court of Claims to recover back money exacted of an importer in excess of the duties allowed by law, the court held that no contract to refund was implied, because the money, though paid under protest, was paid voluntarily, and for this reason, among others, that court had no jurisdiction.

In *Gibbons* v. *United States* (8 id. 269), an army contractor, who had agreed to furnish two hundred thousand bushels of oats at a fixed price, had, as this court held, after delivering part of the amount, been legally released from the obligation to deliver the balance.  He was, however, carried before the military authority in a state of fear and trepidation, and to save himself further trouble agreed to and did deliver the remainder of the oats.  He sued in the Court of Claims for the difference between the contract price and the market price of the oats at the time of the delivery.  One ground of his claim was that he acted under duress and the constraint of fear, and that his agreement to deliver at the contract price was void.

This court said, in answer to this argument, that " it is not to be disguised that this case is an attempt, under the assumption of an implied contract, to make the government responsible for the unauthorized acts of its officers, those acts being in themselves torts. . . . The language of the statutes which confer jurisdiction upon the Court of Claims excludes, by the strongest implication, demands against the government founded on torts.  The general principle which we have already stated as applicable to all governments, forbids, on a policy imposed by necessity, that they should hold themselves liable for unauthorized wrongs inflicted by their officers on the citizen, though occurring while engaged in the discharge of official duties. . . .  These reflections admonish us to be cautious that we do not permit the decision of this court to become authority for righting in the Court of Claims all wrongs done to individuals by the officers of the general government, though they have been committed while serving the government and in the belief that it was for its interest.  In such cases, where it is proper for the nation to furnish a remedy, Congress has wisely reserved the matter for its own determination."

With the reaffirmation of this doctrine, which excludes the present case from the jurisdiction of that court, its judgment dismissing the petition of plaintiff is

*Affirmed.*