CARPENTER *v.* UNITED STATES.

(*Circuit Court, S. D. Ohio, W. D.* February 21, 1891.)

1. CLAIMS AGAINST UNITED STATES—USE OF PRIVATE PROPERTY.
    Where a government employe, having property in his possession for a certain purpose, by consent of the owner, uses it by order of his superior officer for another purpose, there is no legal implied contract of hiring for government use.

2. SAME—CLAIMS EX DELICTO.
    In such case, where the owner recovers judgment for conversion of the property against the employe, the latter cannot sue the United States for indemnification, since Act Cong. March 3, 1887, c. 359, § 1, giving the court of claims jurisdiction of all claims on any contract, express or implied, with the United States, expressly excepts cases sounding in tort.

At Law.

Act Cong. March 3, 1887, c. 359, § 1, provides that the court of claims shall have jurisdiction to hear and determine all claims founded upon "any contract, express or implied, with the United States, or for damages, liquidated or unliquidated, in cases not sounding in tort, in respect of which claims the party would be entitled to redress against

the United States either in a court of law, equity, or admiralty, if the United States were suable."

*Bateman & Harper*, for plaintiff.

*John W. Herron*, for defendant.

SAGE, J. After the ruling in this case, (reported 42 Fed. Rep. 264,) upon the suggestion of counsel for the plaintiff that the facts were imperfectly stated in the petition, the demurrer to which had been sustained, and that properly stated they would sustain a claim for indemnification by the government, I permitted an amended petition to be filed, to which the government answered, joining issue on the points hereinafter referred to. The cause is now before the court upon the pleadings and testimony submitted by the parties.

The first point made for the plaintiff is that the hiring of the flat by Mr. Carpenter for the use of the government was legally authorized. The testimony does not establish that the flat was hired. It had been in possession of the plaintiff with the consent of Mr. Wolf, the owner, for another purpose. That purpose having been accomplished, the plaintiff, upon the order of Lieut. Mahan, took possession of it, and used it in the work of removing a wreck from the channel of the Ohio river, at a point a short distance below Pittsburgh. The plaintiff was then in the employment of the government, under the orders of Lieut. Mahan, who was subordinate to Col. Merrill. Col. Merrill had directed Lieut. Mahan to remove the wreck in question, which was an obstruction to navigation, and the plaintiff was assisting in that work. This was in the spring of 1873.

The next point for the plaintiff is that the hiring of the flat was reasonably necessary; and the third, that, the plaintiff having acquired possession of it on behalf of the government, the government became bound for its surrender, and for the performance of plaintiff's contract in its behalf with Wolf, the owner of the flat; that is, to take good care of it, to deliver it at the point agreed upon on the Ohio river, and to pay Wolf for its use. Counsel urge that it was not the plaintiff's affair, but the government's; and, if the government was in any respect in default, it was responsible to the owner for damages under the contract implied by the taking possession of and using the flat; also that, inasmuch as plaintiff was sued and compelled to pay damages by reason of his connection with the transaction as an agent of the government, the government must indemnify him.

The fatal objection to the plaintiff's claim is that he sues for indemnification, and presents as his evidence the record of the suit brought against him in the state court at Pittsburgh. He seeks to recover the amount of the judgment therein rendered against him, with his expenses incurred in his defense. The statute of limitations would bar a recovery upon any other ground. But that suit was an action sounding in tort. It was begun on the 3d day of May, 1873, in the district court of Alleghany county. A *capias*, styled in trover, was issued against the plaintiff and his co-defendants. It was followed by a declaration in "tres-

pass on the case," as it is termed in the pleadings. The declaration, however, alleged the conversion of the flat by the defendants to their own use, and demanded damages therefor. The case proceeded to judgment for the sum of $874.78, with costs. On the 9th of October, 1885, nothing having been paid upon the judgment, the plaintiff was arrested, and imprisoned for 28 days; and on the 6th of May, 1886, having given bond for his release from imprisonment, he paid the amount of the judgment, and the costs thereon, in all $1,574.47, of which $26.30 were the costs.. He also sets up that he has expended in attorney fees, and in the payment of expenses in his defense, $156.88; wherefore he prays judgment against the government for the sum of $1,731.75, with interest from May 6, 1886.

In *U. S.* v. *Manufacturing Co.*, 112 U. S. 645, 5 Sup. Ct. Rep. 306, which is cited for the plaintiff, it appeared that certain property, to which the United States asserted no title, was taken by its officers or agents, pursuant to an act of congress, as private property for the public use, and it was held that the government was under an implied obligation to make just compensation to the owner. In that case there had been no formal proceedings for the condemnation of the property to public use, but the owner waived any objection that he might have been entitled to make, based upon the want of such proceedings, and elected to regard the action of the government as a taking under its sovereign right of eminent domain, and therefore demanded compensation for the property. The supreme court held that the United States, having by its agent, proceeding under the authority of a special act of congress, taken the property of the claimant for public use, were under an obligation imposed by the constitution to make compensation. The court said:

"The law will imply a promise to make the required compensation where property, to which the government asserts no title, is taken, pursuant to an act of congress, as private property to be applied for public uses. Such an implication being consistent with the constitutional duty of the government, as well as with common justice, the claimant's cause of action is one that arises out of implied contract, within the meaning of the statute which confers jurisdiction upon the court of claims of actions founded 'upon any contract, express or implied, with the government of the United States.'"

The court further said:

"If the claimant makes no objection to the particular mode in which the property has been taken, but substantially waives it, by asserting, as is done in the petition in this case, that the government took the property for the public uses designated, we do not perceive that the court is under any duty to make the objection in order to relieve the United States from the obligation to make just compensation."

The radical difference between that case and the case now before the court is that there the plaintiff waived the tort, and based his claim upon the implied obligation of the government, by reason of the provisions of the statute, to make compensation for the property. But here there is on the one hand no showing whatever of any contract with Wolf, the owner of the flat, under which possession was taken, for the contrary appears upon the face of the petition; and, on the other hand, ·

,there was no waiver by Wolf of the tortious taking, but he prosecuted his claim for damages by reason of that taking.

In *Langford* v. *U. S.*, 101 U. S. 341, the supreme court held that the court of claims has jurisdiction only in cases *ex contractu*, and that an implied contract to pay does not arise where the officer of the government, asserting its ownership, commits a tort by taking forcible possession of the lands of an individual for public use. The court say that in such a case the government or the officers who seize such property are guilty of a tort if it be in fact private property, and that no implied contract to pay can arise any more than in the case of such a transaction between individuals. With reference to the restriction of the court of claims to cases of contract, the court say that the reason therefor is that, while congress might be willing to subject the government to the judicial enforcement of contracts, which could only be valid as against the United States when made by some officer of the government acting under lawful authority, with power vested in him to make such contracts, or to do acts which implied them, the very essence of a tort is that it is an unlawful act, done in violation of the legal rights of some one, and for such acts, however high the position of the officer or agent of the government who did or commanded them, congress did not intend to subject the government to the results of a suit in that court. Precisely the restriction referred to in that case is placed upon the jurisdiction of this court by the act of March 3, 1887, under which this suit is brought.

In *Gibbons* v. *U. S.*, 8 Wall. 269, the supreme court held that the government is not liable on an implied *assumpsit* for the torts of its officer committed while in its service, and apparently for its benefit. The court said that it was not to be disguised that the case was an attempt, under the assumption of an implied contract, to make the government responsible for the unauthorized acts of its officers, those acts being in themselves torts, and that no government has ever held itself liable to individuals for the misfeasance, laches, or unauthorized exercise of power by its officers or agents. Justice MILLER, in the course of his opinion, says that the language of the statutes which confer jurisdiction upon the court of claims excludes, by the strongest implication, demands against the government founded on torts, and that the general principle already stated as applicable to all governments forbids, on a policy imposed by necessity, that they should hold themselves· liable for unauthorized wrongs inflicted by their officers on the citizen, though occurring while engaged in the discharge of official duties. He further says that in such cases, where it is proper for the United States to furnish a remedy, congress has wisely reserved the matter for its own determination, and that it certainly has not conferred it on the court of claims.

These authorities control the case now .before the court, and in accordance with them the judgment will be for the government, with costs.