Weldon, J.,
delivered the opinion of the court:
This is a proceeding to recover compensation for damages alleged to have been suffered by the plaintiffs in March, 1889, in consequence of the wreck of the Trenton and Vandalia, in being driven ashore in the harbor of Apia, in the Samoan Islands.
It is averred that in 1889 the said vessels were wrecked and stranded not far from the land of said plaintiffs, who at the time were citizens of Great Britain, and engaged in business at said point as shipping merchants; that the wrecked ships were allowed by the United States to remain where they were cast by the sea for a long period, to wit, from the 13th day of March, 1889, until the 31st day of May, 1890; that in consequence of said ships being allowed to remain in said position, not far from plaintiffs’ land, the currents of the sea in said harbor were so deflected from their former course as to flow directly in and upon the property of the plaintiffs, whereby much of the said land has been washed away, and the improvements and the buildings seriously injured, to the damage of the plaintiffs in the sum of $10,000.
The plaintiff's farther allege that, at the time of the said disaster to said ships and until the proclamation of the President of the United States of the general act by and between the United States and the Kingdom of Great Britain and Ireland and up to the 21st of May, 1890, there was no government in the Samoan Islands recognized by the United States; that on the 22d day of February, 1890, 'the plaintiffs presented to the consul of Great Britain, at said place, a complaint iu regard to the damages done said property by the neglect of the United States in not removing said wrecks, and that the continuance of the said wrecks was a continual source of danger to their said lands; that said complaint, on the 24th of February, 1890, was sent by the consul to-the United States vice-consul at Apia, with a request that the same be forwarded to *193 the United States Naval Department; that said wrecks were not removed or abandoned by the United States after the receipt of said claim and notice; but, on the contrary, were allowed to remain, and full possession was maintained by the United States over said wrecks, to the damage of the plaintiffs as aforesaid.
•To the petition the defendants filed a demurrer, upon the grounds that the action “sounds in tort,” and of such a claim the court is without jurisdiction. It is insisted by counsel for claimants that, upon the facts alleged, there is in law an implied contract upon the part of the defendants to pay the damages incident to their neglect to remove the wrecks.
The act entitled “ An Act to provide for the bringing of suits against the Government” (1 Supp. Rev. Stats., 2d ed., 159) ■is as follows:
“That the Court of Claims shall have jurisdiction to hear and determine the following matters:
“ First, All claims founded upon the Constitution of the United States or any law of Congress, excepts for pensions, or upon any regulation of an Executive Department, or upon any contract, expressed or implied, with the Government of the United States, or for damages, liquidated or unliquidated, in cases not sounding in tort, in respect of which claims the party would be entitled to redress against the United States either in a court of law, equity, or admirality if the United States were suable.”
The theory of the claimants is, that the averments of the petition present the legal elements of a contract, and upon that theory they base the liability of the United States. Upon the other hand, the counsel for the defendants insist that the allegations present a case of tort, if any responsibility attaches to the acts or omissions of the agents of the Government.
In support of the claimant’s contention we are cited to the following cases: The people of the State of N. Y. v. Cen. R. R. Co. (42 N. Y., 285); The Missouri River Packet Company v. The Hannibal and St. Joseph R. R. Co. (2 Fed. Rep., 285), and the case of The Maggie Hammond (9 Wall., 435). We have examined those cases; but in our opinion they do not sustain the contention of the claimants as applied to the facts *194 in this case. In the litigation in those cases, except the first, the controversy was between private parties or corporations, where the court was invested with full jurisdiction to determine the right of the parties in the most extended application of the law. The jurisdiction of the courts in which those cases were determined was not subject to the limitation incident to this court in dealing with the rights and responsibilities of the United States.
The averments of the petition do not charge that the United States by any express undertaking agreed to remove the wreck, or that there was any physical contact with the property of claimants by an appropriation of its use; but that, in consequence of the neglect of the defendants in not removing the wrecks of the vessels, the property of the claimants was injured by the increase of 'the flow of the water upon the margin of claimants’ land. The injury was the result of consequential damages and not of direct force. At common law the action for the alleged grievance would be an action on the case, unless the law will infer a promise upon which to predicate an action ex contractu. That parties at common law may sometimes waive the tort and sue in assumpsit is well established by many cases, but not in a case of this kind. If it is within the power of the claimants to adopt that privilege of the common law, the jurisdiction of this court would be as broad as the manifold grievances complained of against the officers and agents of the United States. Whatever may have been the rights of suitors under the former statutes of our jurisdiction as to the waiver- of the tort, since the passage of the act of 1887 that right is emphatically denied.
The term used in the statute, “not sounding in tort,” was intended to prevent this court from adopting the legal theory of cases, in which it has been held by other courts that by the election of the aggrieved party the character of the proceeding may be changed from an action ex delicto to an action ex contractu. This court has had occasion to distinguish between cases sounding in tort and cases arising on contract.
The United States not having entered upon the possession of the land of claimants, no question of the appropriation of private property from which a promise to pay might be inferred can arise. There was no taking either with or without claim of title of property, but simply a consequential damage to *195 property because of tbe negligence of tbe agents of tbe defendants in not removing tbe debris of tbe wrecked vessels.
Tbe term “ sounding in tort,” as used in the act of 1887, is tbe key that unlocks the issue as presented by tbe averments of tbe petition and tbe demurrer. If tbe alleged cause of action does not arise from a contract either expressed or implied or upon some of tbe other clauses of tbe statute, then, whatever may have been the negligence of tbe United States and tbe consequent damage to tbe claimants, thejr are without remedy. Tbe authorities are abundant to the effect that at common law tbe claimants would have to adopt tbe action of case, which, aside from its enlargement in tbe action of assumpsit, is an action ex delicto.
Tbe latest decision of tbe Supreme Court affecting tbe question in issue is tbe case of Hill v. The United States (149 U. S., 593). In tbe opinion and syllabus it is said:
“ A claim by a person asserting title 'in land under tide water for damages for tbe use and occupation thereof by tbe United States for tbe erection and maintenance of a lighthouse, without bis consent and without compensation to him, but not showing that the United States have acknowledged any right of property in him as against them, is a case sounding in tort, of which tbe circuit court of the United States has no jurisdiction under the act of March 3, 1887, chapter 359.
“ The whole effect of tbe act of March 3,1887, chapter 359, under which this suit was brought, was to give the circuit and district courts of the United States jurisdiction concurrently with the Court of Claims of suits to recover damages against the United States in cases not sounding in tort. (United States v. Jones, 131 U. S., 1, 16, 18.)
“The United States can not be sued in their own courts without their consent, and have never permitted themselves to be sued in any court for torts committed in their name by their officers. Nor can the settled distinction in this respect between contract and tort be evaded by framing the claim as upon an implied contract. (Gibbons v. United States, 8 Wall., 269, 274; Langford v. United States 101 U. S., 341, 346; United States v. Jones, above cited.”)
“An action in the nature of assumpsit for the use and occupation of real estate will never lie where there has been no relation of contract between the parties, and where the possession has been acquired and maintained under a different or adverse title, or where it is tortious, and makes the defendant a trespasser. (Lloyd v. Hough, 1 How., 153, 159; Carpenter v. United States, 17 Wall., 489, 493.)
“It has since been held that, if the United States appropriate *196 to a public use, land which they admit to be private property, they may be held, as upon an implied contract to pay its value to its owner. (United States v. Great Falls Manuf. Co., 112 U. S., 645, and 124 U. S., 581.”)
As has been said, every injury does not necessarily give a right of action. The doctrine of damnum absque injuria embraces many cases where the most serious consequences arise without a remedy to recover satisfaction in a judicial proceeding. The owner of property, within the proper exercise of his right, may do many things resulting in damage to other persons without being responsible for the consequences.
If the United States did anything affecting the rights of the claimants, the damages arose from the alleged negligence to remove the vessels, and that alleged negligence being, as it is averred, the cause of the damage, the claim is founded upon a tort; and the action being founded on that negligence, the proceeding “sounds in tort” within the meaning of the statute. This construction is based upon many cases decided in the Supreme Court and in this court, and the law upon that point is too well settled to admit of speculation or theory as to its meaning.
The following cases are in point as to the law of this case:
Dennis, C. Cls. R., 210; Gibbons, 7 id., 106; Gill, 25 id., 415;. Schellinger et al., 24 id., 278; Fawcett, 25 id., 178; Lanman, 27 id., 260; Langford, 12 id., 338; Langford, 101 U. S., 341; Jackson, 27 C. Gls. R., 74; Walton, 24 id., 372; Gibson v. United States, ante. In the Langford case it has been held:
“ That court has jurisdiction only in cases ex contractu, and an implied contract to pay does not arise where the officer of the Government, asserting its ownership, commits a tort by taking forcible possession of the lands of an individual for public use.
“ The provision restricting that jurisdiction to contracts express or implied refers to the well-understood distinction between matters ex contractu and those ex delicto, and is founded on the principle that while Congress is willing to subject the Government to suits on contracts, which can be valid only when made by some one thereunto vested with authority, or when under such authority something is by him done which raises an implied contract, that body did not intend to make the Government liable to suit for the wrongful and unauthorized acts which are committed by its officers under a mistaken zeal for the public good.
“If, under claim that they belong to the Government, an *197 officer seizes for tbe use of au Indian agency buildings owned by a private citizen, no implied obligation of tbe United States to pay for tbe use and occupation of them is thereby raised. (101 U. S., 341.)”
Tbe averments of tbe petition clearly disclose an action “sounding in tort,” and tbe jurisdiction of this court not embracing actions of tbat kind, tbe demurrer is sustained and tbe petition is dismissed, with leave to bave the judgment set aside and tbe petition amended if the claimants so elect on or before tbe first Monday in May next.