Howry, J.,
delivered the opinion of the court:
This case is sought to be maintained under the general jurisdiction of the court and does not come under the provisions of the Bowman Act.
The petition alleges that on or about February 18,1863, the petitioner was arrested at Berlin, Frederick County, Md., by officers of the United States whose names and offices are yet unknown to the petitioner, and property, consisting of a team of two horses, wagon, and harness, and a load of goods and family supplies, was taken from him; that petitioner was at once taken to Washington and imprisoned, and in about three months thereafter released without trial or charges; that the provost-marshal in Washington gave back to the petitioner several hundred dollars of his money and some of his goods, and informed him that the remainder of his property was turned over to the War Department; that on being released it became necessary for petitioner to return to his family and take them to his old home m New York, but before leaving the city he spent several days searching for the property taken from him, *582 but without success; that the horses, wagon, harness, and goods have never been found or heard of by petitioner, or returned, or paid or accounted for to him; that at the time this property was taken the United States needed and was buying property of like classes, and petitioner believes and therefore avers that the unreturned property was eventually used for the public service of the United States. Eecovery is sought for the value of the property.
The defendant moved to dismiss the petition because the cause of action attempted to be stated sounds in tort; and secondly, that the cause of action, if any, arose more than six years prior to the date of the filing of the petition.
The essential circumstances necessary to create an assumpsit in law implied from an act in pais do not very clearly and satisfactorily appear from the allegations of the petition. But treating the averment that the United States obtained and used the property without making any claim thereto, we will consider the petition as stating a case of conversion of the property by the Government to its use, for which an action ex contractu might arise.
The cause of action attempted to be stated sounds in tort, and to establish his right to recover claimant seeks to follow that class of cases where it has been held that a party may waive a tort and maintain an action for money had and received. But the whole extent of this doctrine seems to be that one whose goods have been taken from him or detained unlawfully, whereby he has a right to an action of trespass or trover, may, if the wrongdoer sell the goods and receive the money, waive the tort, affirm the sale, and have an action for money had and received for the proceeds. (1 Chitty on Contracts, 11th ed., p. 86; 5 Pick., 289, 290; Lamb v. Clark, 7 Pick., 133; Gilmore v. Wilbur, 12 Pick., 120; Miller v. Miller, 7 Pick., 133; Merrick, J., in Brown v. Holbrook, 4 Gray, 102, 103; Morrison v. Rogers, 2 Scam., 317; Gray v. Griffith, 10 Watts, 431; O'Conley v. Natchez, 1 Sm. & M., 31; Berly v. Taylor, 5 Hill, 577; Stocket v. Watkins, 2 Gill & J., 326; Cromwell v. Lovett, 1 Hall, 56; Cummings v. Noyes, 10 Mass. (Rand’s ed.), 436, note (b); Whitwell v. Vincent, 4 Pick., 449; Floyd v. Wiley, 1 Miss., 430; Labeaume v. Hill, 1 Miss., 643.)
In such cases the jurisdictional question is simply whether private property was taken as such lay the authorized officers *583 of tbe United States for the use of the United States, or whether it was actually used by the United States so that the Government derived a benefit from the taking. (Salamon v. United States, 19 Wall., 17.)
The fiction that the same acts may in certain instances and under certain conditions constitute concurrently a tort and an implied contract, and that in such cases the person aggrieved may elect to complain in either form, has been recognized by the courts from an early period in the history of the common law. But the courts have uniformly held that such election goes only to the remedy and can not change the tortious character of the act itself nor convert the grievance into one not sounding in tort.
The novel position is taken by the claimant that the taking of his property was a proper act, and that its seizure became a bailment; that the Government having become a trustee for the owner, there was nothing wrong in dealing with the matter but the failure to account and make the necessary reparation for the value of the property.
The Government can not be made responsible for the unauthorized acts of its officers where, in a case like this, the acts complained of were in themselves torts. The averments of the petition disclose flagrant wrongs upon the petitioner, but we are without the necessary jurisdiction to afford the remedy. The general principle applicable to all governments forbids, on a policy imposed by necessity, that they should hold themselves liable for unauthorized wrongs inflicted by their officers on the citizen, though occurring while engaged in the discharge of official duties. (Gibbon v. United States, 8 Wall., 269; Langford v. Same, 101 U. S., 341; United States v. Jones, 131 U. S., 116; Hill v. United States, 149 U. S., 593.)
The policy, founded in wisdom and necessity, exempting the Government from liability for wrongs done to individuals by officers has been extended to injuries committed by such officers while serving the Government and in the belief that such acts were for the public good. Oases of this character are reserved for the special action of Congress.
For the judicial enforcement of valid contracts, which can only be valid as against the United States when made by some officer of the Government acting under lawful authority, with power vested in him to make such contracts or to do acts which *584 implied them, jurisdiction was conferred in the following language by the act entitled 11 An act to provide for the bringing of suits against the Government” (1 Supp. Rev. Stats., 2d ed., 150), to wit:
“ That the Court of Claims shall have jurisdiction to hear and determine the following matters:
“ First. All claims founded upon the Constitution of the United States or any law of Congress, except for pensions, or upon any regulation of an Executive Department, or upon any contract, expressed or implied, with the Government of the United States, or for damages, liquidated or unliquidated, in cases not sounding in tort, in respect of which claims the party would be entitled to redress against the United States either in a court of law, equity, or admiralty if the United States were suable.”
Whatever may have been the rights of suitors under the statutes antedating the jurisdictional section quoted as to the waiver of the tort and the right to sue as upon an implied contract, that right must be denied since the act of 1887. (McArthur v. United States, 29 C. Cls. R., 191.)
Where the United States, by authority of an act of Congress, appropriate land to public use, the Government may be held as upon an implied contract to pay its value to the owner if the land is admitted to be private property. (United States v. Great Falls Manufacturing Co., 112 U. S., 645; 124 U. S., 581.) But the plaintiff in that case chose to acquiesce in the taking of its property for publie use and to accept the offer of the Government, under the act authorizing the taking, to have the amount of compensation fixed by this court. The distinction between actions ex delicto and ex contractu is too well defined to further elaborate, and the difference between contract and tort can not be evaded by framing the claim in suit as upon an implied contract.
The act to restrict the jurisdiction of this court and to provide for the payment of certain demands for quartermaster stores and subsistence supplies furnished to the Army (13 Stat. L., 381) declared that such jurisdiction should not extend to or include any claim against the United States growing out of the destruction or appropriation of or damage to property by the Army or Navy, or any part of the Army and Navy, engaged in the suppression of the rebellion, from the commencement to the close thereof. The second section of this act provided.that all claims of loyal citizens in States not in *585 rebellion for quartermaster stores actually furnished to the Army and receipted for by the proper officer receiving the same, or which might have been taken by such officers without giving such receipt, might be submitted to the Quartermaster-General with proofs; and thereupon it became the duty of the officer mentioned to cause the claim to be examined, and if convinced of the loyalty of the claimant and the justice of the claim, and that the stores had been actually received or taken for the use of and used by the Army, then to report such case to the Treasury for settlement.
This act is decisive of the question of jurisdiction. The manner of the appropriation, whether made by force or upon the consent of the owner, does not affect the question of jurisdiction. The consideration of any claim, whatever its character, growing out of such appropriation is excluded. The term “appropriation” is of the broadest import; it includes all taking and use of property by the Army and Navy in. the course of the war not authorized by contract with the Government. (Filor v. The United States, 9 Wall., 45.)
For want of jurisdiction and the evident bar of the statute of limitations for whatever cause of action the plaintiff may have had, it is the opinion of the court that the petition be dismissed.