Peelle, J.,
delivered the opinion of the court:
This action is for the recovery of royalty under an implied contract for the use of an alleged improvement in subcaliber projectiles for which letters patent were granted to the claimant’s decedent December 13, 1864.
The action was originally prosecuted (as disclosed by the averments in the original petition filed February 23,1883), on the theory that the mere use by the United States of the improvement rendered them liable under that provision of the Constitution which prohibits the taking of private property for public use “ without just compensation.” That is to say, for the mere use of such property by the Government, whether authorized or not, a contract therebjr arose in law to make just compensation to the owner.
On January 25, 1886, an amended petition was filed, alleging, among other things, in substance, that the United States, with the assent of the claimant’s decedent, and subsequently With her assent as administratrix, had manufactured and used said improvement, by reason of which assent on their part “a contract was created between the parties by which the United States became liable to pay * * * a reasonable royalty for the use of said letters patent.”
The jurisdiction of this court, except under special acts, has never extended to cases arising in tort, and by the act of March 3, 1887 (24 Stat. L., 505), being the present jurisdictional act, cases “sounding in tort” are in terms excluded *645 from our jurisdiction, and such has been the uniform holding of the Supreme Court and this court; so that, to entitle the claimant to recover in the present case it is incumbent upon her to show that the claim for which she seeks a recovery is one founded upon a contract, “express or implied, with the Government.”
But as the defendants raise the question of the statute of limitations, which is a bar in this court, whether pleaded or not, we will first consider that question; for, considering the validity of the patent and the creation of an implied contract to pay for the use thereof, there can be no recovery unless the same was used (during the life of the patent) within six years from the time of filing the original petition herein, as provided by Revised Statutes, section 1069, which, among other things, provides: “Every claim against the United States, cognizable by the Court of Claims, shall be forever barred unless the petition setting forth a statement thereof is filed in the court * * * as provided by law within six years after the claim first accrued * .*
In the case of Finn v. United States (123 U. S., 227, 232), where that section was under construction, the court, among other things, said: “As the United States are not liable to be sued, except with their consent, it was competent for Congress to limit their liability in that respect to specific causes of action brought within aprescribed period.” (Nichols v. United States, 7 Wall., 122, 126.) * * * “The duty of the court under such circumstances, whether limitation was pleaded or not, was to dismiss the petition, for the statute, in our opinion, makes it a condition or qualification of the right to a judgment against the United States that, except where the claimant labors under some one of the disabilities specified in the statute, the claim must be put in suit by the voluntary action of the claimant or be presented to the proper department for settlement within six years after suit could be commenced thereon against the Government * * *.” “ The general rule that limitation does not operate by its own force as a bar, but is a defense, and that the party making such a defense must plead the statute if he wishes the benefit of its provisions, has no application to suits in the Court of Claims against the United States: An individual may waive such a defense, either expressly or by *646 failing to plead the statute, but the Government has not expressly or by implication conferred authority upon any of its officers to waive the limitation imposed by statute upon suits against the United States in the Court of Claims. Since the Government is not liable to be sued, as of right, by any claimant, and since it has assented to a judgment being- rendered against it only in certain classes of cases brought within a prescribed' period after the cause of action accrued, a judgment in the Court of Claims for the amount of the claim which the record or evidence shows to be barred by the statute would lie erroneous.”
The facts respecting the use of the patented device set forth in findings x and xi are substantially these: That between the 13th day of December, 1864, when the letters patent were issued, and the 13th day of December, 1881, when the patent expired, the United States purchased, manufactured, or used 81,543 connon shot or projectiles, on the heels of which were, soft metallic rings or sabots for rifle guns. But what number, if any, of such projectiles so manufactured or purchased were used after February 23, 1817, i. e., within six years from the date of filing said original petition, does riot appear.
In the orignal petition the claim is based on the use of the improvement by the Army and Navy, "while in the amended petition filed vJanuary 25, 1886, the claim is based on tiro manufacture and use. But if we should concede that the ■manufacture alone was the use for which royalties would become due, the facts found do not show what number, if any, of such projectiles were manufactured within six years prior to the filing of the petition, nor is it shown what number, if an3% of such projectiles were purchased or used during that period, and for that reason there can be no recovery.
In respect of an implied contract to pay for the use of a patented device, the current of judicial decisions is that where an officer of the Government takes and holds the possession of private property for public use, conceding it to be private property, an implied contract will arise therefrom to make compensation to the owner. On the other hand, whore such officer takes and holds the possession of such property under, a claim that it belongs to the Government, the United States can not be charged upon an implied contract to pay therefor. *647 (Langford v. United States, 101 U. S., 341, 346; United States v. Palmer, 128 U. S., 262, 269; United States v. Berdan Fire Arms Co., 156 U. S., 552, and Sohillinger v. United States, 155 U. S., 163.)
The latest decision on the subject is that of the United States v. Lynah et al. (188 U. S., 445), wherein by reason of the construction by the Government across the bed of the Savannah River of certain dams and training walls, the natural flow of the river was hindred, thereby causing' its water to rise and overflow an adjacent rice plantation, rendering it unfit for cultivation.
The dams and training walls were conceded by the defendants to have been constructed by authority of the Government in the lawful improvement of the navigable river, and so the court in that respect said: “The action which was taken, resulting in the overflow and injuiy to these plaintiffs, is hot to be regarded as the personal act of the officers, but as the act of the Government.” In that case the numerous authorities on the subject are admirably collected, and what is decided in each case is clearly stated.
From the authorities referred to it will be seen that something more than a mere infringement is essential to give this court jurisdiction.
The question is, therefore, Did the Government use the patented device recognizing the claimant or her decedent as the rightful owner?
The facts and circumstances pertaining to the use, if any, of the invention of the claimant’s decedent are set-forth in finding vx, and are, in substance, that on September 1, 1859— prior to the application for a patent, but after the claimant’s decedent had filed his caveat in the Patent Office, where he was employed as an examiner — the claimant’s decedent addressed a communication to the Chief of the Bureau of Ordnance of the Navy Department, reciting in substance that after several years’ experiment on a projectile for rifled cannon he had presented one to Captain Dahlgren, who, after examining it, requested him to accept a few lines to the Department recommending that twenty of them be made at the navy-yard at Government expense. The few lines of Captain Dahlgren therewith inclosed of the same date recite that said *648 Henry had shown to him a plan of shell for rifled cannon which he told him had been fired by an officer of the Army; that the result seemed to him to justify a trial, and he expressed the desire to- have two of them made for trial. Nothing, apparently, having been done with reference to it, said Henry, on September 23, 1859, again addressed a letter to Captain Ingraham, Chief of the Bureau of Ordnance, United States Navy, calling his attention to the shot of which he had spoken to him, in response to which Captain Ingraham informed him, under date of September 23, 1859, that the commandant of the navy-yard had been directed — upon his furnishing the model — to have such number of shots cast as would test the utility of his invention for naval purposes.
Whether the shot so ordered were cast and tested does not appear. All that took place between the claimant’s decedent and the ordnance officer respecting the test of his invention was nearly five years before the letters patent were issued to him. The use of the invention thereafter as the device of Parrott, for which he was granted letters patent, negatives, we think, any implied contract on the part of the Government to pay royalty to Henry for the use of his patented device.
What took place between the officers of the Government and Parrott in respect to the use of the invention which he claimed, can not avail the claimant in 'this action, nor can the court from the correspondence between her decedent and the Chief of the Bureau of Ordnance in September, 1859, respecting the manufacture and test of his invention, imply a contract to pay for the use thereof on the issuance of letters patent nearly five years later. “An inventor has no exclusive right before a patent has been issued.” (Kirk v. United States, 163 U. S., 49, 55, and authorities there cited.)
'On January 8, 1851, the claimant’s decedent filed a caveat in the Patent Office claiming to have invented a cannon shot or shell, which he described as set forth in finding hi, and it was doubtless the invention there described that he was seeking to have the Chief of the Bureau of Ordnance manufacture and test, while the patent granted to him, as shown by letters patent made a part of the petition herein, is quite different. But we will not dwell upon this branch of the case, for, conceding the device patented to be the same as *649 the invention covered by the caveat, when the officers of the Government began the use of the Parrott device in August, 1861, no right of property therein was recognized in the claimant’s decedent. On the contrary, the Government had, before using the. device, acquired the right thereto through Parrott, the patentee, and to that extent, as against the claimant’s decedent, was claiming to be the owner. Hence we reach the conclusion from the facts and circumstances of this case that no implied contract arose to pay royalty for the use of the device for which letters patent were subsequently issued to said Henry.
For the reasons given the petition is dismissed.