Campbell, Chief Justice,
reviewing the facts found to be established, delivered the opinion of the court:
For the convenience of plaintiff in getting its newspapers to an early morning train an arrangement was made with the postal authorities under which its newspapers would be weighed at the railroad station instead of being carried to and weighed at the post office, and thence taken to the train. The mail wagon, under an arrangement with the contractor or the driver, would call by plaintiff’s place of business, sometimes on its way to the train .from the post office with the regular mail and sometimes by a special trip for that purpose, and get the newspapers. While this plan was in operation the plaintiff decided to secure the benefits of express rates (which were less by one-half than the postal rates for second-class mail matter) on portions of its papers, and, with that object in view, it caused its papers, intended by it to go by mail, to be put into mail sacks, and the portions which it intended to go by express to be wrapped in bundles and labeled “ Express or baggage.” The sacks and bundles were placed in said wagon and were by the driver deposited on a platform, where the regular mail matter was deposited, at the railroad station. Plaintiff notified the express agent of its purpose to send some of its newspapers by express, and, for some time, porters or messengers of the express company took charge of the bundles labeled “ Express or baggage,” and caused them to be transported by express. The defendant’s mail transfer clerk weighed the sacks of papers and they went by mail. During that time the express office and the office of the transfer clerk were located near each other and both opened upon the said platform. Later the express office was removed several hundred feet away from where the transfer clerk’s office was, but the deposit of plaintiff’s papers upon the platform by the driver of the wagon continued as formerly. For about two years, and while the two offices were near each other, there appears to have been no difficulty in handling the papers, as designed for mail or express, but commencing about October 1,1908, plaintiff’s *615 papers in sacks and in tbe bundles labeled as stated and deposited on said platform were weighed by the defendant’s transfer clerk, were placed upon the train, and caused to be transported as second-class mail matter. The postage charges were by the postal regulations payable in advance, and plaintiff made a deposit with the postmaster, which was supplemented as from time to time it was reduced by charges for the weights ascertained as stated. The transfer clerk reported daily to the post office the net weight of the papers transported by mail, and periodically the postmaster rendered statements to plaintiff. The statutory rates for second-class mail matter were applied to the net weights of the papers and were paid by the plaintiff.
The course of action here complained of continued from about October 1, 1908, to about April 1, 1913, during which period there was no complaint. The express company’s porters or messengers had ceased to go to said platform and get the bundles marked “Express or baggage.” Just why they ceased to go' does not definitely appear. There is some testimony to the effect that one or more of the messengers had stated that they were informed at the platform that the plan of' delivering papers there designed for express had been discontinued, but from whom that information was derived, if given at all, does not appear.
It seems not improbable that a change of transfer clerks which occurred and a change of location of the express office had something to do with the failure to have the papers go by express instead of by mail.
? Plaintiff having during the period of about four years paid ; the regular second-class mail-matter rate on the papers now ; seeks to recover the sums paid by it as'postage on the weights ; of the papers labeled “ Express or baggage.” The original petition claimed the difference between what it would have cost to send them by express and the regular postal rate, and by an amendment the claim is for the entire amount paid as postage. On its brief, plaintiff says “ the gravamen of the action, of course, is that the United States holds money of this claimant’s which was paid to it under a mistake of fact.” The question for decision is whether from the facts *616 found the law will imply a contract on the part of the Government to repay to the plaintiff the sums paid, or any part of them. It is not every mistake, however made, that will sustain or justify a recovery of money paid by a plaintiff to a defendant. Barlow’s Case, 132 U. S., 271, 281. In the instant case there is no question that the matter was transported as mail matter; no mistake was made in the net weights, nor in the postage rates charged for second-class mail matter. As a matter of fact, the papers went as mail and reached their destinations, though by a more expensive method than plaintiff contemplated. There was not failure of consideration. There was no misrepresentation of the fact of transportation or of the weight or the rate. The money paid by plaintiff was the correct amount that was payable for the weights of papers when transported as second-class mail matter.
The money which plaintiff paid and now seeks to recover was, therefore, in no proper sense paid under mistake of fact. It may be conceded that if actual knowledge had come to plaintiff that its papers were being weighed into and transported as mail it would have taken steps to change that practice. But the situation is not sufficient to raise up an implied contract on the Government’s part to return the money received by it for a service that was actually performed.
The court can not say that the rate to be paid for the papers when carried as second-class mail matter shall be less than the statutory rate. The law has established the charge. Nor can we say that the plaintiff should pay nothing for the service which was rendered and from which the plaintiff : got a benefit in the transportation and delivery of its papers.
would be liable if they were suable as an individual for the act of the transfer clerk we need not consider, because if plaintiff’s loss or damage was occasioned by a want of care or the negligent act of the transfer clerk, and without plaintiff’s fault, the Government could not be held responsible therefor in this court. For the negligences or misfeasances of its officers or agents the United States have not consented to be sued. Gibbon's Case, 8 Wall., 269.
*617 “ Torts committed by an officer in the service of the United States do not render the Government liable in an implied assumpsit, even though the acts done were apparently fÉr the public benefit.” Whiteside Case, 93 U. S., 247, 257. In such cases, say the Supreme Court, where it is proper for the Nation to furnish a remedy, Congress has reserved the matter for its own determination. Langford Case, 101 U. S., 341, 346.
The facts not justifying a conclusion that the law raises an implied contract between the parties, the petition should be dismissed, and it is so ordered.
Hat, Judge; Downey, Judge/ Barney, Judge, and Booth, Judge, concur.